**EFS MARKETING, INC., Plaintiff–Appellee–Cross–Appellant,**

v.

**RUSS BERRIE & COMPANY, INC., and Russell Berrie, Defendants–Appellants–Cross–Appellees.**

Nos. 302, 422, Dockets 94–9119, 94–9157.

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1995.

Decided Feb. 12, 1996.

Roger L. Zissu, New York City (Howard M. Rogatnick, Weiss Dawid Fross Zelnick & Lehrman, P.C., New York City, of counsel), for Defendants–Appellants–Cross–Appellees.

Robert L. Sherman, New York City (Paul, Hastings, Janofsky & Walker, New York City, of counsel), for Plaintiff–Appellee–Cross–Appellant.

Before: VAN GRAAFEILAND, JACOBS and PARKER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This litigation arose out of a dispute between competing merchandisers of troll dolls. In a complaint filed in the United States District Court for the Southern District of New York on August 15, 1991, EFS Marketing, Inc. (EFS) sought monetary damages and injunctive relief from Russ Berrie & Co. and its Chief Executive Officer, Russell Berrie (collectively Berrie). The complaint contained four causes of action. The first alleged an infringement of EFS's dolls' trade dress and false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The second alleged that the defendants traded on plaintiff's good will, injured its business reputation and confused the public, in violation of state common law's prohibition of unfair competition. The third alleged that the defendants affixed a false designation of copyright to troll dolls they marketed, also in violation of section 43(a). The fourth asserted that the defendants practiced trade deceptively in violation of section 349 of New York's General Business Law.

Following a bench trial, the district court (Keenan, J.) held in Berrie's favor on the trade dress infringement claim (Count I), the state unfair competition law claim (Count II), and the state section 349 claim (Count IV), and in EFS's favor on the false designation of copyright claim (Count III). In the process of so doing, the district court sua sponte invalidated troll doll copyrights held by both parties. 836 F.Supp. 128 (S.D.N.Y.1993).

The appellate process leading to the decision we now render is not a model of clarity. Both parties appealed the invalidation of their respective copyrights. EFS appealed in addition the dismissal of its first and second counts. However, EFS concludes its principal brief on appeal with the request that the dismissal of "Counts I, II and IV should be *reversed.*" Insofar as EFS's requests are based on state law, i.e., Counts II and IV, they may be disregarded. Neither side has addressed any arguments on appeal to alleged violations of state law, and we therefore consider any such arguments to have been abandoned. *See Anderson v. Branen,* 27 F.3d 29, 30 (2d Cir.1994); Fed.

R.App.P. 28(a)(5). Because of the obvious lack of merit in EFS's state claims, EFS suffers no "manifest injustice" in being required to abide by the rules governing appellate procedure.

For the reasons that follow, we affirm the district court's holding on Count I, reverse its holding on Count III, and vacate its sua sponte invalidation of both parties' copyrights.

## BACKGROUND

EFS and Berrie market competing lines of troll dolls, those ugly but somehow endearing creatures of mythical origin. Quite popular in the 1960's, troll dolls caught market fancy again in the early 1990's. In 1991, total sales topped $200 million. EFS began its line of troll dolls called "Norfins" in 1982, long before the current fad took hold. Norfins were a modest success with over $12 million in sales in the years 1982–1991. Russ Berrie & Company, Inc., a much larger concern, introduced a competing line of troll dolls in 1990, and quickly expanded its sales to $44 million in 1991. By 1992, there were at least twenty other companies in the troll doll market.

It is undisputed that EFS's Norfins and Berrie's troll dolls look a lot alike. The district court found that

> there are many similarities. Both are made of vinyl or rubber. Both lines have outstretched arms and colorful hair that often stands up straight. Each has four toes on each foot and four fingers on each hand. Their faces are characterized by large, round eyes and broad, pronounced pug noses.

836 F.Supp. at 130.

These similarities are not by accident. Both lines of troll dolls, as well as those of other manufacturers, follow to a greater or lesser degree a design by Thomas Dam. Dam, a Danish woodcarver, made the first troll doll in the late 1950's or early 1960's as a gift for his daughter. His doll was sold in the United States in the 1960's and received United States copyright protection. However, the copyright later was declared invalid, leaving Dam's design in the public domain for copyright purposes. *See Scandia House*

*Enters. v. Dam Things Establishment,* 243 F.Supp. 450 (D.D.C.1965).

Although Dam's troll doll was the substantial prototype for both EFS's and Berrie's dolls, Berrie asserts that it made several alterations in its design to produce a more human, and presumably more loveable, doll. The alterations alleged are

the chin coming after [the] smile line; rounded ears; brown [e]ye color; eyes closer together; head disproportionate in size to body; no blush on cheeks; flatter shorter chest length; scalloped round digits on hand; softly rounded eyelids; short space between nose and mouth; width of hairline longer; rounded bottom; longer legs in proportion to body; and no gradation in toes' size.

836 F.Supp. at 131.

EFS's Norfin troll dolls, which are manufactured by Dam Things from Denmark, also known as Dam Things, Denmark, the manufacturer of the original Dam troll, are faithful to the original design. Inspired by the success of Smurfs, a popular line of dolls, EFS decided to market Norfins as a collection of differently dressed troll dolls, including characters such as a bride, a sailor, a girl in exercise clothes, etc. This marketing technique was designed to encourage repeat purchases by customers. By the time of trial, there were over 150 trolls in the Norfin collection.

Berrie also developed a collection of costumed troll dolls. Although Berrie developed its collection after EFS, the district court found that Berrie did not copy the idea from EFS. *Id.* at 132. Berrie had a long-term relationship with troll dolls—Russell Berrie, the company's chief executive officer, was a sales representative for Dam trolls in the 1960's, and the company sold troll dolls under its own name in the 1970's. Moreover, Berrie was successful in dressing other types of dolls in costumes and selling them as a collection. These facts, plus Berrie's testing of the troll market in the late 1980's with troll pencil toppers, convinced the district court that Berrie's family of costumed troll dolls was not based on EFS's Norfins.

Since 1988, Berrie has placed a copyright notice reading "©RUSS" in small print on the bottom of the left foot of each troll doll.

## TRADE DRESS INFRINGEMENT

Trade dresses are protectable under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), which provides a private cause of action against any person who

in connection with any goods ... or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods ... by another person.

■ This Circuit's interpretation of the law of trade dress infringement, as it existed when the judgment below was entered in 1993, was patterned on the Supreme Court's decision in *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). There, the Court held that in order to maintain an action for trade dress infringement under section 43(a) of the Lanham Act, a plaintiff must demonstrate that (1) its trade dress is inherently distinctive or has acquired distinctiveness through secondary meaning, and (2) there is a likelihood of confusion with defendant's trade dress. *Id.* at 769–70, 112 S.Ct. at 2758.

■ EFS does not contend that its troll dolls had acquired distinctiveness through secondary meaning. This would have required a showing that the purchasing public had come to associate the trade dress of EFS's dolls with EFS, as a single producer or source. *See LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 78 (2d Cir.1985) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 2187 n. 11, 72 L.Ed.2d 606 (1982)). In view of the district court's finding that "both parties' dolls [are] virtually indistinguishable from the 1961 public domain doll," 836 F.Supp. at 133, it is most unlikely that consumers would look to EFS as the sole producer of the troll dolls at issue. The district court therefore limited its consideration to whether EFS's troll dolls were inherently distinctive.

After setting forth the trademark categories of increasing distinctiveness ranging from a low of generic to a high of arbitrary or fanciful, 836 F.Supp. at 135, the district court, quoting *Two Pesos*, 505 U.S. at 767, 112 S.Ct. at 2757, said that "[t]o be inherently distinctive, a trade dress must be either suggestive, arbitrary, or fanciful, such that its 'intrinsic nature serves to identify a particular source of a product.' " 836 F.Supp. at 135. Continuing, the district court said that "generic marks are never protectable under the Lanham Act and descriptive marks must have acquired secondary meaning to become distinctive," *id.*, thus eliminating these two categories as possible bases for a finding of inherent distinctiveness in EFS's dolls. The district court then pointed out that most of the features claimed by EFS to identify its dolls have been elements of the public domain for many years and that the addition of distinctive clothing was a popular market concept. Putting all these factors together, the district court concluded that they negated the possibility that the intrinsic nature of EFS's dolls served to identify EFS as the particular source, and EFS's trade dress was not inherently distinctive. *Id.* at 135–36.

■ Since the decision below was handed down, we have had a further occasion to consider the question of inherent distinctiveness as it applies to the configuration of a product itself, rather than that of the package which contains the product. In *Knitwaves Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1007–08 (2d Cir.1995), which involved a design on a sweater, we explained that product-configuration trade dresses are less likely than packaging-configuration dresses to serve the source-identification function that is a prerequisite to Lanham Act protection. We recognized that consumers do not associate the design of a product with a particular manufacturer as readily as they do a trademark or a product-packaging trade dress.

They are more likely to be attracted to the product for the product's features, rather than for the source-identifying role the features might play. *See Restatement (Third) of Unfair Competition* § 16 cmt. b (1995).

■ *Knitwaves* heeded these considerations in articulating the standard for an inherently distinctive, product-configuration trade dress; i.e., when assessing the distinctiveness of such a dress, a court should consider "whether it is 'likely to serve primarily as a designator of origin of the product.' " 71 F.3d at 1008 (quoting *Duraco Prods., Inc. v. Joy Plastic Enters.*, 40 F.3d 1431, 1449 (3d Cir.1994)). No longer need we decide whether a product-configuration trade dress falls within a particular distinctiveness category; we need determine only whether it is likely to serve primarily as a designator of origin of the product. *Id.* EFS's trade dress also fails to meet this newer standard because, as already pointed out, EFS's dolls are so similar to the many other troll dolls on the market that they cannot be said to identify EFS as their particular source.

Because EFS has failed to demonstrate that the trade dress of its Norfin troll dolls is either inherently distinctive or has acquired secondary meaning, we affirm the district court's dismissal of the claim without considering the likelihood of consumer confusion.

## FALSE ADVERTISING

EFS's claim for false advertising under section 43(a)(1)(B) of the Lanham Act[1] is predicated on Berrie's use of the copyright symbol on its troll dolls. EFS contends that this use of the copyright symbol was actionable as a "false designation of origin," 15 U.S.C. § 1125(a)(1), because Berrie's troll doll design was not sufficiently original to warrant copyright protection.

---

1. Section 43(a)(1)(B) provides in relevant part:

 (a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which
 . . . .

 (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
 shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
 15 U.S.C. § 1125(a)(1)(B).

The district court agreed with EFS that improper use of a copyright symbol is a "per se violation[ ] of Section 43(a) of the Lanham Act." 836 F.Supp. at 133. The court then concluded that Berrie's troll dolls did not demonstrate "substantial originality" as a derivative work of the public domain troll doll. *Id.* Even though Berrie had obtained copyright registrations for its troll doll designs and was entitled to a presumption of originality sufficient to warrant use of the copyright symbol, the district court concluded that Berrie's changes in Dam's troll doll were "simply too imperceptible to the casual observer to justify copyright protection." *Id.* Based on this questionably proper test, *see Puddu v. Buonamici Statuary, Inc.,* 450 F.2d 401, 402 (2d Cir.1971), the district court enjoined Berrie's further use of the copyright notice.

EFS's victory on this claim was costly. The district court also enjoined EFS from using a copyright notice on its troll dolls as they too were "virtually indistinguishable" from Dam's troll doll. *Id.* No damages were awarded for Berrie's asserted improper use of a copyright notice because, in the district court's view, damages would be "inappropriate." *Id.* at 134. Both EFS and Berrie were held to have wrongfully affixed copyright notices to their troll dolls, but only EFS sought damages. However, EFS failed to demonstrate that it was damaged by Berrie's use of the copyright symbol and was not entitled to the presumption of damages applicable in cases where the defendant's conduct is intentionally deceptive. *Id.; see Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found.,* 926 F.2d 134, 140 (2d Cir. 1991).

 Berrie contends that the district court erred in holding that the improper use of a copyright notice, in and of itself, could support a false advertising claim under section 43(a) of the Lanham Act. Berrie is correct. In *Lipton v. The Nature Co.,* 71 F.3d 464, 473 (2d Cir.1995), this Court held "that, as a matter of law, a false copyright notice alone cannot constitute a false designation of origin within the meaning of § 43(a) of the Lanham Act." *See also Kregos v. Associated Press,* 937 F.2d 700, 711 (2d Cir. 1991). We reasoned that if plaintiffs were not required to assert some additional misrepresentation of originality beyond mere use of a copyright symbol, they could convert all improper copyright claims into Lanham Act violations. *Lipton,* 71 F.3d at 473; *Kregos,* 937 F.2d at 711. Where, as here, the alleged wrongdoing is a Lanham Act violation, not a misuse of copyright, the requirement of some additional misrepresentation of originality underscores false advertising's emphasis on consumer reliance. A naked copyright symbol such as the one utilized by Berrie, a small, almost imperceptible mark on the bottom of a doll's foot, is not very likely to influence consumer purchasing decisions. *Cf. Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 37 (2d Cir.1982) (wrongful use of copyright name "©Fred Original" could deceive consumers as to the origin of the product).

EFS points to a single advertisement with the headline "RUSS NOW ... The Original Rainbow Troll" as an additional misrepresentation of originality made by Berrie. The use of the word "original" in this advertisement was to link the advertised version of the rainbow troll doll with one previously offered by Berrie. It was not an assurance of originality. EFS argues also that Berrie ran an advertisement warning would-be copyright infringers that Berrie would protect its rights. However, this advertisement was directed at the trade, not consumers, and made no claim of originality. Even considering these alleged misrepresentations, which were not taken into account by the district court, we conclude that EFS has failed to state a claim for false advertising under 15 U.S.C. § 1125(a)(1)(B).

## THE INVALIDATION OF COPYRIGHTS

When EFS began its marketing of troll dolls in 1982, it did so pursuant to an exclusive distributorship contract with Dam Things, Denmark, the holder of the original copyright on Thomas Dam's troll dolls. Pursuant to the contract, EFS was given the right to distribute the Dam doll under the trademark "Norfin." However, each Norfin was required to contain the following statement: "This model is designed and copyrighted by Dam Things, Denmark."

■ The parties' appellate briefs contain several references to additional copyrights purportedly secured by EFS. However, the record does not contain the evidence that is necessary to confirm the existence and identity of the asserted copyrights. As best we can determine, the parties marketed a total of over 400 troll models, 150 of which belonged to EFS and 250 belonged to Berrie. The district court stated that it examined "dozens of both plaintiff's and defendants' troll dolls. 836 F.Supp. at 133. Following this inspection, the district court inferred from the appearance of EFS's dolls that there existed "attendant copyrights." 867 F.Supp. 192, 192 (S.D.N.Y.1994). By this inverted and somewhat questionable process, the district court inserted into the case the very issue that EFS wanted to avoid—the validity of its own copyrights. The fact of the matter is that we do not know how many copyrights, if any, were held by EFS, when they were obtained, or what troll doll models they covered. Moreover, we do not know what interest, if any, Dam Things, Denmark had in any EFS copyrights that existed. We cannot affirm a permanent injunction against EFS in the face of such a paucity of evidence. The "clean hands" doctrine, to which the district court turned for back-up support, *id.* at 194, cannot supply evidence that otherwise does not exist.

■ In contrast to EFS's situation, the record shows that Berrie had obtained at least a dozen copyrights. Copies of eight of its Certificates of Copyright Registration are in the record. Absent copies of the applications for these Certificates, the meager descriptions contained in the Certificates are of little help in determining which of Berrie's 250 troll doll models are covered by appropriate copyrights. Descriptions such as "3½ inch troll", "4 inch troll", and "6 inch troll" are not very informative as applied to the wide variety of figures at issue. Moreover, assuming that one or more of Berrie's figures contains an improper copyright notice, this, by itself, would not constitute a false designation of origin, which is a basic issue in this section 43(a) case. *See Lipton, supra,* 71 F.3d at 473. As we stated in *Waldman Publishing Corp. v. Landoll, Inc.,* 43 F.3d 775, 781 (2d Cir.1994), "the Copyright Act

and the Lanham Act address different harms." The first follows from a lack of originality, the second from a likelihood of confusion. Finding no likelihood of confusion, 836 F.Supp. at 136, the district court erred in granting the permanent injunction sought by EFS in Count III.

Even if some form of copyright injunction were warranted, the one at issue herein would not pass muster. In *Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108 (2d Cir.1980), we discuss the specificity requirement of an injunction order as follows:

A court is required to frame its orders so that those who must obey them will know what the court intends to forbid. *International Longshoremen's Assn., Local 1291 v. Philadelphia Marine Trade Ass'n.,* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967). "[B]asic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974). It is for this reason that Fed.R.Civ.P. 65(d), like its predecessor 28 U.S.C. § 383, provides that every order granting an injunction shall be specific in its terms and describe in reasonable detail the acts sought to be restrained. An order which does not satisfy the requirement of specificity and definiteness will not withstand appellate scrutiny. *See, e.g., Sanders v. Air Line Pilots Ass'n, Int'l.,* 473 F.2d 244, 247–48 (2d Cir. 1972); *B.H. Bunn Co. v. AAA Replacement Parts Co.,* 451 F.2d 1254, 1268–70 (5th Cir.1971); *E.W. Bliss Co. v. Struthers–Dunn, Inc.,* 408 F.2d 1108, 1113–17 (8th Cir.1969); *Brumby Metals, Inc. v. Bargen,* 275 F.2d 46, 49–50 (7th Cir.1960).

*Id.* at 1111.

■ In the district court's judgment, EFS and Berrie were enjoined "from placing copyright marks on their lines of trolls." 836 F.Supp. at 137. In denying EFS's motion to amend, the district court reiterated its injunction order as follows: "Plaintiff and Defendants remain enjoined from placing copyright notice marks on any of the trolls in their respective lines." 867 F.Supp. at 194. Even if we give the word "trolls" the broad-

est possible meaning of "troll-related products," the word "lines" remains a stumbling block to an unaided, consistently clear interpretation. *See, e.g., Buono Sales, Inc. v. Chrysler Motors Corp.*, 239 F.Supp. 839, 842 (D.N.J.1965), *rev'd*, 363 F.2d 43 (3d Cir.), *cert. denied*, 385 U.S. 971, 87 S.Ct. 510, 17 L.Ed.2d 435 (1966). This is particularly true when the word is examined from a temporal standpoint. It is obvious from the record that the market offerings of both parties constantly were changing. Assuming that the word "lines" refers to all of the parties' troll-related products, does it refer to the lines as they existed on the date of the judgment, or does it refer to "trolls" that either party markets at any time, now or in the future? A properly prepared injunction cannot leave such important questions unanswered.

For all of the foregoing reasons, the district court's sua sponte invalidation of both parties' copyrights is vacated without prejudice to such independent copyright proceeding as either of the parties sees fit to pursue on a proper record. Insofar as the grant of section 43(a) injunctive relief under Count III is concerned, the judgment of the district court is reversed. The denial of section 43(a) relief under Count I is affirmed.