**HERMAN MILLER, INC., Plaintiff,**

v.

**PALAZZETTI IMPORTS & EXPORTS, INC., Defendant.**

No. 96–CV–60277–AA.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 9, 1998.

---

Randall G. Litton, Price, Heneveld, Grand Rapids MI, for Plaintiff.

K. Scott Hamilton, Dickenson, Wright, Detroit MI, Samuel Littlepage, Dickenson, Wright, Washington, DC, for Defendant.

*ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT RE: PLAINTIFF'S TRADE DRESS*

HACKETT, District Judge.

The facts of this case are set out in detail in the court's order granting in part and denying in part defendant's first motion for summary judgment. At issue in the current motion for summary judgment are plaintiff's trade dress claims contained in Counts VI and VIII of its amended complaint. Plaintiff charges that the distinctive shape and design of its Eames lounge chair and ottoman are protected trade dress which defendant has infringed by copying and marketing its replicas. On the other hand, defendant asserts that the trade dress of the lounge chair and ottoman is not protectable under the Lanham Act because either the furniture never acquired any source-identifying quality or, alternatively, such quality was lost in the crowded marketplace featuring the relevant design. Because the court agrees that the design of plaintiff's lounge chair and ottoman is not protectable trade dress, the question of whether plaintiff abandoned any protected trade dress interests will not be considered. For the following reasons, defendant's second motion for summary judgment shall be granted.

## DISCUSSION

■ Section 43(a) of the Lanham Act prohibits any person from using "any false designation of origin" that "is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin ... of his or her goods." 15 U.S.C. § 1125(a)(1)(A). The general rules of trademark law are applicable to trade dress issues. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Although trade dress once "referred only to the manner in which a product was 'dressed up' to go to market with a label, package, display card, and similar packaging elements," the concept now "includes the design and appearance of the product as well as that of the container."

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir.1995). Trade dress is essentially the total " 'image and overall appearance of a product.' " *Esercizio v. Roberts*, 944 F.2d 1235, 1238–39 (6th Cir.1991), *cert. denied*, 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992) (quoting *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 812 (5th Cir.1989)). "It embodies 'that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, intended to make the source of the product distinguishable from another and to promote its sale.' " *Id.* at 1239 (quoting *Mr. Gasket Co. v. Travis*, 35 Ohio App.2d 65, 72 n. 13, 299 N.E.2d 906, 912 n. 13 (1973)).

■ In order to prevail on a trade dress claim under the Lanham Act, a party must first show that its trade dress is inherently distinctive or has become distinctive because it has acquired secondary meaning. *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 967 (2d Cir.1995). If the trade dress at issue is found to be distinctive, plaintiff must then demonstrate that there exists a likelihood of confusion between its product and the alleged infringer's product, and that the appropriated features of its trade dress are primarily nonfunctional.[1] *Esercizio*, 944 F.2d at 1239 (citing *Kwik–Site Corp. v. Clear View Mfg. Co., Inc.*, 758 F.2d 167, 178 (6th Cir.1985)). Accordingly, the threshold inquiry is distinctiveness, or in other words, whether the trade dress identifies the producer, as "[t]he imitation or even complete duplication of another's product or packaging will not create a risk of confusion unless some aspect of the duplicated appearance is identified with a particular source." *Restatement (Third) of Unfair Competition* § 16 cmt. a (1995).

■ A trade dress may identify the producer in one of two ways: a product either may be inherently distinctive or it may acquire distinctiveness by gaining in the mind of consumers a secondary meaning associating the trade dress with the product's

---

1. "A product feature is functional 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.' " *Eser-* *cizio*, 944 F.2d at 1246 (quoting *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)).

source. *Two Pesos*, 505 U.S. at 769. An inherently distinctive trade dress is one that is " 'likely to serve primarily as a designator of origin of the product,' " *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1008 (2d Cir.1995) (quoting *Duraco Prod., Inc. v. Joy Plastic Enter., Ltd.*, 40 F.3d 1431, 1449 (3d Cir.1994)), taking into account "the nature of the designation and the context in which it is used." *Restatement (Third) of Unfair Competition* § 13(a); *see also* 1 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 8.02[f] (3d ed.1994) (inherent distinctiveness determined by "whether the design, shape or combination of elements is so unique, unusual or unexpected in th[e] market that one can assume without proof that it will automatically be perceived by customers as an indicia of origin"). "Under this test, it is no longer enough for a plaintiff to 'demonstrate that the appearance of its product serves some source identifying function;' rather, the plaintiff must show that the 'primary purpose behind the design was to identify its product's source.' " *Herbko Int'l, Inc. v. Gemmy Indus. Corp.*, 916 F.Supp. 322, 328 (S.D.N.Y.1996).

▮▮▮ Plaintiff in this case argues that the design of its lounge chair and ottoman is inherently distinctive trade dress. Specifically, plaintiff asserts that the trade dress at issue consists of "the overall appearance of [its] EAMES lounges chair and ottoman [and] includes the size, shape, proportions and materials of their furniture design." In support of its argument, plaintiff contends:

> From its introduction in 1956, the Herman Miller EAMES lounge chair and ottoman was nearly instantly recognized as a distinctive design. . . . Its numerous awards, media coverage and historical recognition all speak volumes of the unique design of the Herman Miller EAMES lounge chair and ottoman. It is without question that the Herman Miller EAMES chair and ottoman is inherently distinctive.

Assuming arguendo that the design of plaintiff's lounge chair and ottoman is unusual and memorable, plaintiff does not even suggest that the primary purpose of the design was source identification. To the contrary, the record supports a finding that the objective of the design was primarily aesthetic—to enhance the furniture's ornamental appeal—rather than to identify it as plaintiff's product. Furthermore, trade dress is inherently distinctive when, by its "intrinsic nature," it identifies the particular source of the product. *Two Pesos*, 505 U.S. at 768. "[O]ne cannot automatically conclude from a product feature or configuration—as one can from a product's arbitrary name, for example—that, to a consumer, it functions primarily to denote the product's source." *Duraco Prod.*, 40 F.3d at 1441. Here, the configuration of plaintiff's lounge chair and ottoman do not lead to an inference of source identification, especially considering that

> consumers do not associate the design of a product with a particular manufacturer as readily as they do a trademark or a product-packaging trade dress. They are more likely to be attracted to the product for the product's features, rather than for the source-identifying role the features might play.

*EFS Mktg., Inc. v. Russ Berrie & Co., Inc.*, 76 F.3d 487, (2d Cir.1996). In sum, the design configuration of plaintiff's lounge chair and ottoman appears to enhance the product's aesthetic value, rather than identify the source of the product. Therefore, the lounge chair and ottoman fail to qualify for protection of trade dress inherent in product design.

▮▮▮ Next, plaintiff argues that the trade dress of its lounge chair and ottoman has acquired secondary meaning. Secondary meaning refers to "a subsequent significance added to the original meaning" of the trade dress due to a producer's use of it. *Restatement (Third) of Unfair Competition* § 13 cmt. e. To acquire a secondary meaning, the lounge chair and ottoman must have become identified with plaintiff in the minds of potential customers. *See L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co., Inc.*, 79 F.3d 258, 263 (2d Cir.1996). In determining whether the buying public associates the lounge chair and ottoman with plaintiff, the court should consider the following factors: (1) advertising expenditures; (2) consumer studies linking the dress to the source; (3) unsolicited media coverage of the product;

(4) sales success; (5) attempts to plagiarize the dress; and, (6) length and exclusivity of the use of the dress. *Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1222 (2d Cir.1987). No single factor is determinative, and every one need not be proved. *Id.* Ultimately, these elements serve to focus the inquiry on the perception of the "consuming public." *Id.* at 1221. "[T]he showing required is that consumers associate the trade dress with a single source." *Stuart Hall Co., Inc. v. Ampad Corp.,* 51 F.3d 780, 789 (8th Cir.1995).

Plaintiff claims that its lounge chair and ottoman have acquired secondary meaning, mainly relying on defendant's reproduction efforts, its own past sales (over 100,000 lounge chair and ottomans since their introduction in 1956), and affidavits from "some of America's leading designers, design experts and authors, educators and historians, together with Affidavits from Herman Miller employees past and present." Regarding the "unsolicited media coverage" cited by plaintiff, that evidence "reflect[s] interest more in an unusual product [or individual] than in the source of the product." *Duraco Prod.,* 40 F.3d at 1453. Furthermore, there is no evidence that plaintiff's promotional efforts, either unsolicited or intentionally conducted, successfully enhanced the public's ability to connect the furniture with a particular source. In fact, most of plaintiff's exhibits highlight the fact that Charles Eames designed the chair and ottoman, not the fact that plaintiff sells the furniture.

Plaintiff additionally alleges that its lounge chair and ottoman "is universally associated with Herman Miller, as established in the [submitted] Affidavits and by reviewing just a few of the numerous publications featuring this famous design." However, the opinions reached by plaintiff's experts in the design field are not representative of the average consumer and are not based on any articulated factual foundation. Plaintiff must establish that the primary significance of the alleged trade dress in the minds of the consuming public is not the product, but rather the producer. Conclusory affidavits by experts in the field do not meet that burden of proof.

Moreover, plaintiff's sales success does not, by itself, establish the necessary consumer association between the furniture and its source. *Burke–Parsons–Bowlby Corp. v. Appalachian Log Homes, Inc.,* 871 F.2d 590, 596 (6th Cir.1989) ("Sales volume, though relevant, is not necessarily sufficient to indicate recognition of the mark by purchasers as an indication of the source."); *see also Duraco Prod.,* 40 F.3d at 1452 ("Sales success by itself will typically not be as probative of secondary meaning in a product configuration case as in a trademark case."). This is because "the success of a particular product—especially if similar competing products exist—does not readily lead to the inference of source identification and consumer interest in the source." *Duraco Prod.,* 40 F.3d at 1453. Indeed, sales success may well be attributable to many factors other than secondary meaning, the most likely being purchases resulting from the aesthetically pleasing nature of the product, rather than the source-designating capacity of the allegedly distinguishing feature or combination of features. *Id.* at 1452; *Cicena Ltd. v. Columbia Telecommunications Group,* 900 F.2d 1546, 1551 (Fed.Cir.1990). "Analogously, attempts to copy a product configuration will quite often not be probative: the copier may very well be exploiting a particularly desirable feature, rather than seeking to confuse consumers as to the source of the product." *Duraco Prod.,* 40 F.3d at 1453.

> To acquire a secondary meaning in the minds of the buying public, an article of merchandise when shown to a prospective customer must prompt the affirmation, "That is the article I want because I know its source," and not the negative inquiry as to "Who makes that article?" In other words, the article must proclaim its identification with its source, and not simply stimulate inquiry about it.

*Esercizio,* 944 F.2d at 1239 (quoting *West Point Mfg. Co. v. Detroit Stamping Co.,* 222 F.2d 581, 595 (6th Cir.), *cert. denied,* 350 U.S. 840, 76 S.Ct. 80, 100 L.Ed. 749 (1955)). Although media exposure, sales success, and a defendant's copying are all relevant in determining whether secondary meaning exists, the true test of secondary meaning is the

effectiveness of plaintiff's effort to create it. Considering that no evidence was presented of consumer studies or surveys showing source linkage between plaintiff and its product, or "look-for" advertising that promoted an association between the product and the source, the court cannot find that the general public attributes the lounge chair and ottoman to plaintiff. Accordingly, plaintiff has failed to establish that its lounge chair and ottoman have achieved secondary meaning in the marketplace.

## CONCLUSION

In sum, the court finds that the trade dress of plaintiff's lounge chair and ottoman is neither inherently distinctive nor has it achieved secondary meaning and thus is not entitled to protection under the Lanham Act. For these reasons, defendant's second motion for summary judgment regarding plaintiff's trade dress hereby is GRANTED, and Counts VI and VIII of plaintiff's amended complaint hereby are DISMISSED.

SO ORDERED.

## ORDER DENYING MOTION FOR RECONSIDERATION

Plaintiff has filed a motion for reconsideration of the court's order granting defendant's second motion for summary judgment re: plaintiff's trade dress. Local Rule 7.1(h)(3) provides:

> Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

The court finds that the instant motion simply reiterates earlier arguments that have been previously addressed and/or considered. Plaintiff has failed to raise a palpable defect by which the court has been misled or show that a different disposition must result.

Therefore, plaintiff's motion for reconsideration hereby is DENIED.

SO ORDERED.