05-6487-cv
Troll Co. v. Uneeda Doll Co.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2006

Heard: December 22, 2006          Decided: April 13, 2007)

Docket No. 05-6487-cv

- - - - - - - - - - - - - - - - - -
TROLL COMPANY,
          Plaintiff-Appellee,

               v.

UNEEDA DOLL COMPANY,
          Defendant-Appellant.
- - - - - - - - - - - - - - - - - -

Before: MESKILL, NEWMAN, and HALL, <u>Circuit Judges</u>.

     Appeal from the November 28, 2005, Order of the United States District Court for the Southern District of New York (Richard Owen, District Judge), granting a preliminary injunction against Defendant for infringing a copyright restored pursuant to section 104A of the Copyright Act, 17 U.S.C. § 104A.

     Affirmed.

                         Barry G. Magidoff, Greenberg Traurig, LLP,
                              New York, N.Y., for Defendant-Appellant.

                         Craig S. Mende, New York, N.Y. (Michael
                              Chiappetta, Fross Zelnick Lehrman &
                              Zissu, P.C., New York, N.Y., on the
                              brief), for Plaintiff-Appellee.

JON O. NEWMAN, <u>Circuit Judge</u>.

     This appeal, concerning so-called "restored" copyrights, requires the Court to construe for the first time section 104A of the Copyright Act, 17 U.S.C. § 104A, which was enacted in its present form as part

of the Uruguay Round Agreements Act ("URAA"), Pub. L. No. 103-465, 108 Stat. 4809 (1994).  The Defendant-Appellant, Uneeda Doll Co. ("Uneeda"), appeals from the November 28, 2005, order of the District Court for the Southern District of New York (Richard Owen, District Judge), preliminarily enjoining Uneeda from manufacturing, distributing, or selling "Wish-nik" troll dolls, which are alleged to infringe a restored copyright owned by the Plaintiff-Appellee, Troll Co.  On appeal, Uneeda contends that (1) Troll Co. has not demonstrated that it owns the restored copyright, and (2) it is a "reliance party" within the meaning of section 104A and is thus entitled to sell its existing inventory of Wish-nik dolls during a one-year sell-off period.  We conclude that Troll Co. is likely to succeed in proving ownership of the restored copyright and that Uneeda is not a reliance party.  We therefore affirm the order of the District Court.

Background

A brief history of troll dolls.  This case involves the copyright to troll dolls, "those ugly but somehow endearing" plastic dolls with oversized heads, big grins, pot bellies, and frizzy hair. See EFS Marketing, Inc. v. Russ Berrie & Co., 76 F.3d 487, 489 (2d Cir. 1996).  The troll doll was first created in the late 1950s by a Danish woodcarver, Thomas Dam.  Dam called his doll a "Good Luck Troll."  By 1961, Dam was selling his troll dolls in the United States.

In 1962, Dam founded a cleverly named Danish company, Dam Things Establishment, through which he marketed his dolls.  In 1965, Dam Things Establishment obtained a U.S. copyright for the troll doll.

The copyright registration listed Dam Things Establishment as the author of the dolls and 1961 as the year of first publication.  That same year, however, the copyright was invalidated because some dolls had been sold in the United States without the proper copyright notice, and the dolls thereby entered the public domain. See Scandia House Enterprises, Inc. v. Dam Things Establishment, 243 F. Supp. 450, 454 (D.D.C. 1965).  The Good Luck Troll is still protected by copyright in Denmark.

After the troll dolls entered the public domain, numerous companies began marketing the dolls in the United States. See EFS Marketing, 76 F.3d at 489.  The market for troll dolls was somewhat cyclical, as the dolls' popularity surged every decade or so.  The most recent surge in popularity occurred in the early 1990s. See id.

Thomas Dam died in 1989.  Following Dam's death, his heirs granted Troll Co., a Danish company, the exclusive right to exploit and license the troll dolls.

The restoration of the Good Luck Trolls copyright. Congress enacted the URAA on December 8, 1994.  Among other things, the URAA amended[1] section 104A of the Copyright Act to bring the United States into compliance with the Berne Convention,[2] which it had joined in

---

[1]Congress had enacted section 104A one year earlier to comply with the North American Free Trade Agreement. See Dam Things from Denmark v. Russ Berrie & Co., 290 F.3d 548, 554 (3d Cir. 2002). The URAA supplanted that previous version of section 104A. See id.

[2]Berne Convention for the Protection of Literary and Artistic

1989.  See Dam Things from Denmark v. Russ Berrie & Co., 290 F.3d 548, 554 (3d Cir. 2002).  Section 104A restores copyrights for a wide range of foreign works that had previously entered the public domain in the United States because of noncompliance with certain formalities, primarily notice of copyright, imposed by United States copyright law.  See 17 U.S.C. § 104A(h)(6); see also Dam Things from Denmark, 290 F.3d at 554-55.

The parties do not dispute that the Good Luck Troll copyright was automatically restored pursuant to the URAA on January 1, 1996.  Upon learning of the restoration, Troll Co. applied for, and was granted, a registration certificate in 2000.  The registration lists Thomas Dam as the author and Troll Co. as the owner of the copyright, and it states 1957 as the date of first publication.  After receiving the registration, Troll Co. began enforcing its restored copyright.

Uneeda's manufacture and marketing of Wish-nik dolls. In 1963 or 1964, Dam Things Establishment licensed Uneeda Doll Co., Inc. ("UDCI"), Uneeda's predecessor, to produce and distribute a line of troll dolls under the name "Wish-niks."  The record shows that UDCI sold Wish-niks periodically between 1965 and 1984.  According to UDCI's chairman, however, UDCI also sold Wish-niks "at least through 1994 and probably up to 1996."  In 1996, UDCI sold all of its assets, including its copyrights, other intellectual property rights, and goodwill, to Uneeda.

------

Works, Sept. 9, 1886 (Paris Text 1971), S. Treaty Doc. No. 99-27 ("Berne Convention").

In 2001 and 2004, Troll Co.'s president met Wilson Lee, a manager of Uneeda's Hong Kong affiliate, at a toy fair in Germany. On both occasions, Lee allegedly informed him that Uneeda was no longer manufacturing or selling troll dolls and had no intention of doing so in the future. Notwithstanding these discussions, just as Troll Co. was planning a major relaunch of its troll dolls, it learned in August 2005 that Uneeda was selling newly produced Wish-niks to Walmart. The Wish-niks contained copyright notices in Uneeda's name. Walmart withdrew the dolls after Troll Co. informed it that the dolls infringed its copyright.

The District Court proceeding. Troll Co. commenced this copyright infringement action in the U.S. District Court for the Southern District of New York on October 7, 2005.[3] Troll Co. served Uneeda with written notice of its intent to enforce the copyright (a procedure sometimes required under section 104A, as discussed below) on October 18, 2005. After a hearing, the District Judge granted Troll Co.'s motion for a preliminary injunction in an order entered November 28, 2005. See Troll Co. v. Uneeda Doll Co., 400 F. Supp. 2d 601 (S.D.N.Y. 2005). Finding "direct evidence of actual copying," the District Judge concluded that Uneeda's sales of Wish-niks threatened irreparable harm to Troll Co. See id. at 603. He also concluded that

_____

[3]Several days earlier, Uneeda had filed a declaratory judgment action against Troll Co. and its licensee in the U.S. District Court for the Central District of California, No. 2:05-cv-07185. That action was later transferred to the Southern District of New York.

-5-

Troll Co. was likely to succeed on the merits of its copyright infringement claim, rejecting Uneeda's claim to protection as a "reliance party" under the URAA. See id. at 603-04. Accordingly, he preliminarily enjoined Uneeda from manufacturing, distributing, or selling Wish-nik dolls pending resolution of the case. See id. at 604.

Discussion

The standards for obtaining a preliminary injunction and for appellate review of the grant of such an injunction are well known and need not be repeated. See Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999) (preliminary injunction standards); Nicholson v. Scoppetta, 344 F.3d 154, 165 (2d Cir. 2003) (appellate review standard).

Uneeda does not challenge the District Court's conclusion that Troll Co. would suffer irreparable harm without a preliminary injunction. The issue on appeal is whether Troll Co. is likely to succeed on the merits of its infringement claim. Uneeda argues that Troll Co. is unlikely to succeed because (1) Troll Co. has not established that it owns the restored copyright, and (2) Uneeda is a reliance party within the meaning of section 104A, entitling it to sell off its inventory of Wish-niks for one year following Troll Co.'s service of a notice of intent to enforce the restored copyright.

I. Ownership of the Restored Copyright

Uneeda contends preliminarily that the District Court erred in determining that Troll Co. owns the restored copyright.[4] We conclude

---

[4]Although this argument was advanced in the District Court, Judge

that Troll Co. is likely to succeed in proving ownership because evidence submitted to the District Court supports a determination that Troll Co. owns the restored copyright. Troll Co.'s president testified that, after Dam's death in 1989, Dam's heirs transferred Dam's rights to the troll dolls to Troll Co. In addition, the 2000 copyright registration lists Troll Co. as the owner.[5]

According to Uneeda, Troll Co.'s trial court evidence contradicts evidence submitted to the Copyright Office and the U.S. District Court for the District of New Jersey. First, Uneeda points out, the original 1965 registration certificate listed Dam Things Establishment, not Dam himself, as the "author" of the Good Luck Trolls. Consequently, Uneeda argues, Troll Co. must establish a chain of ownership from Dam Things Establishment, not from Dam through his heirs, as Troll Co. argued in the District Court. But the URAA specifies that authorship is to be determined by reference to the source country's law, not by reference to U.S. copyright registration.

---

Owen did not explicitly discuss Uneeda's ownership argument in his opinion. However, a determination that Troll Co. owns the restored copyright is implicit in the District Court's opinion.

[5]We recognize that the registration is not prima facie evidence of ownership because it was made more than five years after the first publication. See 17 U.S.C. § 410(c). Nevertheless, it may carry some evidentiary weight. See id. ("The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.").

-7-

See 17 U.S.C. § 104A(b); see, e.g., Alameda Films S A v. Authors Rights Restoration Corp., 331 F.3d 472, 477 (5th Cir. 2003) (applying Mexican law).  Neither party submitted evidence of Danish law to the District Court.  In any event, to obtain a preliminary injunction, Troll Co. needed to show only that it was likely to prove ownership, and it seems likely that Danish law would consider Dam to be the "author" of the troll dolls since he created the dolls several years before he established Dam Things Establishment.[6]

Second, Uneeda contends that Troll Co. is estopped from arguing that it acquired rights to the troll dolls from Dam's heirs because it

---

[6]Section 104A(b) does not explicitly state that ownership vests in an author's heirs if the author is deceased.  Nor does it explain what, if any, effect should be given to an author's pre-restoration transfer of his ownership rights. Cf. 6 William F. Patry, Patry on Copyright § 24:31 (2007) (stating that "where the author is dead on the date of restoration, ownership of the restored copyright will be determined by the law of successorship of the source country," but that transferees of an initial author must pursue a state court contract action to secure rights to a restored copyright); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 9A.04[B][2][b] (2006) (discussing the ambiguity of this provision).  Because the parties have not raised these issues, we will assume, as the District Court apparently did, that the restored copyright vests in the author's heirs and that courts can give effect to heirs' pre-restoration transfer of rights.

represented to the U.S. District Court for the District of New Jersey in another action that it acquired those rights from Dam Things Establishment. See Dam Things from Denmark, 290 F.3d at 553 n.3. The doctrine of judicial estoppel does not prevent Troll Co. from asserting a different theory of ownership in this case.[7] In any event, even if it is unclear whether Troll Co. obtained ownership of the copyright from Dam Things Establishment, as the Third Circuit stated, or from Dam's heirs, as Troll Co. claims here, Troll Co. is likely to prove ownership one way or the other.

---

[7]"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004). A party invoking judicial estoppel must show that (1) another party advanced an inconsistent position in another proceeding and (2) the first tribunal adopted that position in some manner. See id. Even if Troll Co.'s theories of ownership are factual positions, and even if the Third Circuit or the New Jersey district court adopted Troll Co.'s theory of ownership, the two theories of ownership are not necessarily contrary to one another. The district court in Dam Things from Denmark also mentioned a 1989 agreement between Dam's heirs and Troll Co. confirming Troll Co.'s exclusive rights to the Good Luck Troll designs. See Dam Things from Denmark v. Russ Berrie & Co., 173 F. Supp. 2d 277, 280 (D.N.J. 2001), rev'd on other grounds, 290 F.3d 548 (3d Cir. 2002).

II. Whether Uneeda Is a Reliance Party

Uneeda's primary argument on appeal is that Troll Co. cannot bring an action at this time to enjoin Uneeda's sales because Uneeda, as a reliance party under the URAA, is entitled to a one-year sell-off period. To understand this argument, it is necessary to review the URAA's provisions in some detail.

A. The URAA

Congress enacted the URAA on December 8, 1994, to bring the United States into compliance with the Berne Convention's Rule of Retroactivity.[8] See Dam Things from Denmark, 290 F.3d at 554; see also 6 William F. Patry, Patry on Copyright § 24:18 (2007) ("Patry"); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 9A.02 (2006) ("Nimmer"). The URAA restored copyright protection for foreign works that had fallen into the public domain for technical reasons unrelated to expiration of the copyright term. Congress's intention in restoring such protection to foreign copyrights was to secure similar protection for American copyright holders abroad. See Dam Things from Denmark, 290 F.3d at 554.

The URAA restores copyrights as of January 1, 1996,[9] for original

---

[8] See Berne Convention art. 18.

[9] The date of restoration, as specified by Congress in 1997, see Pub. L. No. 105-80, 111 Stat. 1529 (1997), is January 1, 1996, if the source country of the work was an adherent to the Berne Convention or a World Trade Organization member on that date. See 17 U.S.C. § 104A(h)(2)(A). A leading commentator contends that the restoration

-10-

works that (1) are not in the public domain of their source countries through expiration of their copyright terms, (2) are in the public domain in the United States because of noncompliance with legal formalities, (3) have at least one author who was a national or domiciliary of an eligible country,[10] and (4) were first published in an eligible country and were not published in the United States within thirty days of first publication. See 17 U.S.C. § 104A(h)(6). A copyright restored under section 104A "vests initially in the author . . . of the work as determined by the law of the source country of the work." Id. § 104A(b).  The parties do not dispute that the invalidated troll doll copyright qualifies for restoration under these provisions.

Much of section 104A concerns the enforcement of restored copyrights against parties that were legitimately exploiting works in reliance on their public domain status.  The statute creates a category of prior exploiters called "reliance parties," who may continue to exploit the work until the owner of the restored copyright makes known its intent to enforce its copyright.  The statute creates three categories of reliance parties:

_____

date, which he equates with what he contends is the effective date, is January 1, 1995. See 6 Patry §§ 24:26-24:28.  We take no position on this controversy, which has no bearing on our decision.

[10]Eligible countries include World Trade Organization member countries and adherents to the Berne Convention. See 17 U.S.C. § 104A(h)(3).

(A) [any person who,] with respect to a particular work, engages in acts, before the source country of that work becomes an eligible country, which would have violated section 106 if the restored work had been subject to copyright protection, and who, after the source country becomes an eligible country, continues to engage in such acts;

(B) [any person who,] before the source country of a particular work becomes an eligible country, makes or acquires 1 or more copies . . . of that work; or

(C) [any person who,] as the result of the sale or other disposition of . . . significant assets of a person described in subparagraph (A) or (B), is a successor, assignee, or licensee of that person.

17 U.S.C. § 104A(h)(4). Thus, subsections (A) and (B) make the status of a reliance party turn on whether a person took certain actions with respect to a work prior to the date that the source country of that work became an eligible country. And, for purposes of subsections (A) and (B), a source country that was a member of the Berne Convention when the URAA was enacted (including Denmark) became an eligible country on the date of the URAA's enactment, December 8, 1994. See id. § 104A(h)(3)(B); Hoepker v. Kruger, 200 F. Supp. 2d 340, 345-46 n.5 (S.D.N.Y. 2002); see also 6 Patry § 24:39; 3 Nimmer § 9A.04[C][1][b][i]-[ii]. The District Court mistakenly looked to the date of copyright restoration, January 1, 1996, rather than the date of the URAA's enactment, to determine the date when Denmark became an eligible country and hence whether Uneeda or its predecessor was a reliance party by reason of having acted with respect to the troll dolls prior to that date. See Troll Co., 400 F. Supp. 2d at 603. This error was understandable, as several other courts have also tied reliance party status to the date of copyright restoration. See

-12-

Peliculas y Videos Internacionales, S.A. v. Harriscope of Los Angeles, Inc., 302 F. Supp. 2d 1131, 1137 (C.D. Cal. 2004); Dam Things from Denmark v. Russ Berrie & Co., 173 F. Supp. 2d 277, 285 n.9 (D.N.J. 2001), rev'd on other grounds, 290 F.3d 548 (3d Cir. 2002).

An owner of a restored copyright may not enforce its copyright against a reliance party without first giving notice, either constructive or actual, of its intent to enforce the copyright. Until January 1, 1998, an owner of a restored copyright could file a notice of intent to enforce its copyright with the Copyright Office, thereby putting all reliance parties on constructive notice of its intent. See 17 U.S.C. § 104A(e)(1). Troll Co. did not file such a notice. Alternatively, at any time, a copyright owner may serve a notice of intent directly on a reliance party. See id. § 104A(e)(2). Troll Co. served a notice of intent on Uneeda on October 18, 2005. After receiving actual or constructive notice of intent to enforce, a reliance party must cease making copies of the protected work. See id. § 104A(d)(2)(A)(ii)(III), (B)(ii)(III). However, the reliance party is entitled to a twelve-month grace period in which to sell off its already existing copies. See id. § 104A(d)(2)(A)(ii)(I), (B)(ii)(I); see also Dam Things from Denmark, 290 F.3d at 555.

B. Uneeda's Claim to Reliance Party Status

Uneeda contends that its predecessor, UDCI, was a reliance party under subsection 104A(h)(4)(A) because UDCI continued to engage in infringing acts after Denmark became an eligible country upon the URAA's enactment, and under subsection 104A(h)(4)(B) because UDCI made at least one copy of the troll doll before the URAA's enactment.

-13-

Accordingly, Uneeda further contends, it is a reliance party under subsection 104A(h)(4)(C) because it is UDCI's successor, and it is therefore entitled to the URAA's twelve-month sell-off period.

Uneeda's subsection 104A(h)(4)(A) contention. Because subsection 104A(h)(4)(A) confers reliance party status on a person who "continues" to engage in infringing acts after December 8, 1994, Uneeda's subsection (A) contention requires us to construe the term "continues," which is, as far as we are aware, a task courts have not previously undertaken.[11] Troll Co. argues that the provision contains a "continuing acts requirement" and that resuming sales after nine or ten years, as Uneeda did, does not satisfy this requirement. Uneeda responds that the language of subsection (A) does not require the infringing activity to be uninterrupted and that the periodic renewal of cyclical exploitation "continues" such exploitation.

The text of the statute is ambiguous and could support either

---

[11]Uneeda cites two cases in which courts concluded that defendants were entitled to reliance party status notwithstanding several-year gaps between the first exploitation or acquisition and post-restoration exploitation. See Peliculas y Videos Internacionales, S.A. v. Harriscope of Los Angeles, Inc., 302 F. Supp. 2d 1131 (C.D. Cal. 2004); Hoepker v. Kruger, 200 F. Supp. 2d 340 (S.D.N.Y. 2002). However, it does not appear that the plaintiffs in those cases argued that gaps in exploitation precluded reliance party status. Because these cases did not expressly consider this issue, they provide little value to our analysis here.

interpretation.  Given the statute's ambiguity, it is appropriate to consider the legislative history.  See Rombro v. Dufrayne (In re Med Diversified, Inc.), 461 F.3d 251, 255 (2d Cir. 2006).  The Chairman of the House Subcommittee on Intellectual Property and Judicial Administration stated:

> A key to the reliance party status under this provision is the requirement that the person have continued to engage in the described conduct.  This requirement incorporates the continuing infringement doctrine and is also relevant to section 104A(4) concerning statutory damages and attorney's fees.[12]  Under this doctrine and section 104A, the defendant must have engaged in an ongoing series of acts.  Cessation of that activity for an appreciable period of time will deprive one of reliance party status.

140 Cong. Rec. E2263, E2264 (Oct. 8, 1994) (statement of Rep. Hughes).  The Chairman's reference to statutory damages and attorney's fees indicates that he understood the "continuing infringement doctrine" as the principle that "infringement 'commences' for the purposes of [determining whether infringement commences before a copyright's registration] when the first act in a series of acts constituting continuing infringement occurs."  Johnson v. Jones, 149 F.3d 494, 506 (6th Cir. 1998).

Under 17 U.S.C. § 412, a plaintiff may not recover statutory

---

[12]Section 104A(4) does not exist.  The Chairman presumably meant to refer to section 104A(d)(4), which states that, for purposes of 17 U.S.C. § 412 (discussed below), "infringement shall be deemed to have commenced before registration when acts which would have constituted infringement had the restored work been subject to copyright were commenced before the date of restoration."

damages or attorney's fees for any infringement "commenced" before the effective date of a copyright's registration. The courts have held, based on the provision's text, legislative history, and purpose, that a plaintiff may not recover statutory damages and attorney's fees for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration. See, e.g., id. at 505-06 (holding that the purposes of section 412 "would be thwarted by holding that infringement is 'commenced' for the purposes of § 412 each time an infringer commits another in an ongoing series of infringing acts," and citing cases); Singh v. Famous Overseas, Inc., 680 F. Supp. 533, 535 (E.D.N.Y. 1988) ("That verb [commenced] generally presupposes as a subject some kind of activity that begins at one time and continues or reoccurs thereafter.").

The legislative history of section 104A suggests that Congress understood section 412 to mean that a post-registration act of infringement will not be deemed to have commenced before registration if the infringing activity ceased for an appreciable period of time. In such a case, the copyright owner could recover statutory damages and attorney's fees for that new, post-registration act of infringement. By using the word "continues," Congress must have intended to incorporate this same principle into subsection 104A(h)(4)(A).[13] We therefore construe subsection 104A(h)(4)(A) to

---

[13]See also 6 Patry § 24:40 ("There is no definition of 'continue' because Congress wanted the doctrine of continuing infringement

-16-

confer reliance party status only on persons whose infringement is ongoing and without more than trivial interruption. This limitation is consistent with the purpose of the URAA's reliance provisions. A party that has invested time and resources into ongoing exploitation of a work in reliance on the work's public domain status would incur substantial harm from the sudden inability to engage in that business; the URAA therefore requires owners of restored copyrights to notify such parties of their intent to enforce and gives those parties a year after notification to sell off their inventories. By contrast, a party that has voluntarily ceased exploitation for a non-trivial period of time, here, nine or ten years--even where such exploitation was episodic due to the cyclical nature of consumers' interest in the product--has a less substantial interest in being able to resume that exploitation after restoration.[14]

Applying this standard to this case, we first observe that UDCI initially may have been a reliance party under subsection 104A(h)(4)(A) following the URAA's enactment. According to the evidence before the District Court, UDCI "sold Wish-nik dolls beginning in 1992 and continuing into the mid-1990s, at least through

_____

developed by the courts to apply. . . . Without setting an outside limit, a cessation of one year is beyond that permitted under the section.").

[14]We express no opinion on whether an exploiter of seasonal, as opposed to cyclical, goods, e.g., a seller of holiday merchandise, could qualify as a reliance party.

-17-

1994 and probably up to 1996." Because the District Court mistakenly deemed reliance party status to turn on the date of restoration, January 1, 1996, it concluded that UDCI could not have been a reliance party. However, as explained above, the critical date for assessing reliance party status is December 8, 1994. If the District Court were to credit Uneeda's evidence and find that UDCI sold Wish-niks in 1995, UDCI would have been a reliance party under subsection 104A(h)(4)(A) because it would have continued to engage in infringing acts after December 8, 1994.

Notwithstanding this observation, we need not remand the case for reexamination of UDCI's claim to reliance party status. Even if we assume that UDCI was a reliance party for some period of time, UDCI and Uneeda, as its successor, would have retained that status only to the extent that they continued to engage in such infringing acts. For the reasons set forth above, Uneeda's renewed manufacture and sale of Wish-niks after a nine- or ten-year hiatus is not a continuation of infringement under subsection 104A(h)(4)(A). Accordingly, Uneeda cannot claim protection as a reliance party under this provision.

Uneeda's subsection 104A(h)(4)(B) contention. In the alternative, Uneeda claims that UDCI qualified as a reliance party under subsection 104A(h)(4)(B) because it made or acquired at least one copy of the troll doll before the URAA's enactment. The parties urge competing interpretations of subsection 104A(h)(4)(B). According to Uneeda, the provision allows anyone who made or acquired a copy of a work before the URAA's enactment to manufacture additional copies after restoration. Under this interpretation, Uneeda would be able to

-18-

manufacture new Wish-niks after the copyright's restoration because UDCI made Wish-niks before the URAA's enactment. Troll Co. argues for a narrower interpretation that would permit a party who acquired or made one or more copies of a work before the URAA's enactment only to dispose of those particular copies. Under this interpretation of subsection 104A(h)(4)(B), UDCI and Uneeda, as its successor, could sell Wish-niks manufactured before the URAA's enactment, but they could not manufacture new Wish-niks.

The text of subsection 104A(h)(4)(B) is ambiguous on this point, and there is no legislative history clarifying Congress's intent. However, it is an elemental principle of statutory construction that an ambiguous statute must be construed to avoid absurd results. See, e.g., Frank G. v. Board of Education, 459 F.3d 356, 368 (2d Cir. 2006). Uneeda's proposed interpretation would render the statute absurdly broad: any entity that purchased even one Wish-nik doll many years ago while the troll dolls were in the public domain could decide to begin manufacturing troll dolls after the restoration of the copyright and thereby become a reliance party.[15] Conferring reliance party status on such entities would be incompatible with the URAA's

---

[15]See also 6 Patry § 24:40 (distinguishing between subsections (A) and (B) on the ground that (A) "focuses on particular infringing acts, whereas . . . (B) focuses on particular copies"); 3 Nimmer § 9A.04[C][1][a] (advocating the narrow interpretation of this provision because the broader interpretation would "qualif[y] even a casual book collector with an old volume languishing on the shelf").

dual goals of restoring copyright protection and safeguarding legitimate reliance interests. Because we must interpret the statute to avoid such an absurd result, we conclude that Congress intended to limit the benefit of reliance party status under subsection 104A(h)(4)(B) only to those copies made or acquired before the URAA's enactment.

Because Uneeda intends to sell recently manufactured Wish-niks and does not claim to be disposing of Wish-niks made by UDCI before the URAA's enactment, it is not entitled to reliance party status as UDCI's successor under subsections 104A(h)(4)(B)-(C).

Conclusion

For the foregoing reasons, the District Court's order granting preliminary injunctive relief to Troll Co. is affirmed.