United States Court of Appeals
Fifth Circuit

**F I L E D**

May 19, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-20869
_____

ALAMEDA FILMS S A DE C V; CIMA FILMS S A DE CV;
CINEMATOGRAFICA FILMEX S A DE C V; CINEMATOGRAFICA
JALISCO S A DE C V; CINEMATOGRAFICA SOL S A DE C V,

      Plaintiffs - Counter Defendants - Appellees
           - Cross Appellants,

CINEPRODUCCIONES INTERNATIONAL S A DE C V; CINEVISION S A DE
CV; DIANA INTERNACIONAL FILMS S A DE C V; FILMADORA MEXICANA
S A DE C V; GAZCON FILMS S A DE C V; GRUPO GALINDO S A DE C V;
MIER S A DE C V; ORO FILMS S A DE C V; PELICULAS Y VIDEOS
INTERNACIONALES S A DE C V; PROCINEMA S A DE C V;
PRODUCCIONES EGA S A DE C V; PRODUCCIONES GALUBI S A DE C V;
PRODUCCIONES MATOUK S A DE C V; PRODUCCIONES ROSA PRIEGO S A;
PRODUCCIONES TORRENTE S A DE C V; PRODUCCIONES VIRGO S A
DE C V; VIDEO UNIVERSAL S A DE C V; SECINE S A DE C V;
CUMBRE FILMS S A DE C V,

      Plaintiffs - Appellees - Cross Appellants,

v.

AUTHORS RIGHTS RESTORATION CORPORATION INC; MEDIA RESOURCES
INTERNATIONAL LLP; TELEVISION INTERNATIONAL SYNDICATORS INC;
H JACKSON SHIRLEY, III;

      Defendants - Counter Claimants - Appellants
           - Cross Appellees.

_____

Appeal from the United States District Court for the
Southern District of Texas
_____

Before WIENER, BENAVIDES, and DENNIS, Circuit Judges.

Wiener, Circuit Judge:

    Plaintiffs-Appellees-Cross-Appellants Alameda Films, S.A., et

al. (collectively, "the Plaintiffs") are 24 Mexican film production companies that sued Defendants-Appellants-Cross-Appellees Authors Rights Restoration Corp., Inc., Media Resources International, Television International Syndicators, Inc., and H. Jackson Shirley, III (collectively, "the Defendants"), claiming copyright violations in 88 Mexican films that the Defendants distributed in the United States ("U.S."). Following a lengthy and vociferously disputed discovery process and the filing of numerous pre-trial motions, including eight motions filed by the Defendants for partial summary judgment, the district court eliminated from consideration seven of the 88 films in question and conducted a jury trial on the Plaintiffs' claims concerning the remaining 81 Mexican films. The jury returned a verdict for the Plaintiffs on all claims.

On appeal, the Defendants proffer myriad issues, but their principal complaints implicate the district court's (1) determining that production companies, such as the Plaintiffs, can hold copyrights under Mexican law, (2) permitting the Plaintiffs to recover damages for both copyright infringement and unfair competition, and (3) awarding attorney fees and costs to the Plaintiffs. In addition, the Defendants assert a litany of legal and factual errors purportedly committed by the district court during the trial. The Plaintiffs cross-appeal the district court's grant of partial summary judgment to the Defendants on the copyright status of seven of the 88 disputed films. We affirm the district court on all issues advanced on appeal, except for the

2

quantum of attorneys' fees and costs awarded to the Plaintiffs, which we remand to the district court for a more precise determination, per the Johnson factors,[1] of the Plaintiffs' recoverable fees and costs incurred.

I.
FACTS and PROCEEDINGS

In the mid-1980s, the Defendants began distributing a variety of Mexican films in the U.S. This activity included 88 films that had been produced and released by the Plaintiffs in Mexico during that country's "golden age" of cinema, between the late-1930s and the mid-1950s. The Plaintiffs acknowledge that, at the time the Defendants began distributing these 88 films in the U.S., 69 of them had lost their copyrights here for failure of the authors to comply with U.S. copyright formalities, such as registering and renewing copyrights. According to the Plaintiffs, however, the legal status of these films changed in 1994 when the U.S. adopted the Uruguay Round Agreement Act ("URAA"),[2] thereby amending the 1976 Copyright Act.[3] The URAA eliminated many of the formalities previously required for copyrighting foreign works in the U.S, including registration and notice. The URAA also provided, effective January 1, 1996, for the automatic restoration of

---

[1] See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

[2] Pub. L. 103-465, 108 Stat. 4809 (1994).

[3] See 17 U.S.C. § 104A (codifying the portion of the URAA pertaining to copyright).

3

copyrights in various foreign works that had fallen into the public domain in the U.S. as a result of their foreign authors' failure to follow U.S. copyright formalities.[4]

Following Congress's 1994 adoption of the URAA, the Defendants began to obtain assignments of "rights" to the films from some individual "contributors," such as screenwriters and music composers. The Defendants did not, however, contact any of the Plaintiffs to obtain assignments or licenses to these films. The Defendants continued to distribute Mexican films in the U.S. after January 1, 1996, the date on which the U.S. copyrights were automatically restored in those films that were eligible for copyright restoration under the URAA.

In June 1998, the Plaintiffs filed suit in the U.S. District Court for the District of Columbia, alleging that the Defendants violated the Plaintiffs' (restored) U.S. copyrights in the 88 films here at issue. The Plaintiffs also alleged unfair competition by the Defendants in violation of the Lanham Act, as well as several common-law claims. The Defendants filed a counter-claim, and, a few months later, the case was transferred to the Southern District of Texas.

Following discovery, the Plaintiffs filed a motion for partial summary judgment that they were the "authors" of the films under Mexican law and thus held the U.S. copyrights that were restored

---

[4] 17 U.S.C. § 104A(a)(1)(A) & (h)(2)(A).

4

under the URAA.  Defendants filed two cross-motions for partial summary judgment, claiming that (1) under Mexican law, only natural persons, such as the individual contributors, and not artificial or juridical persons, such as film production companies, could be "authors"; and (2) seven of the 88 films produced by Plaintiffs were ineligible for copyright restoration under the URAA because these seven had fallen into the public domain in Mexico.  The Defendants also filed a motion to dismiss the action and another for partial summary judgment.

The district court eventually denied all motions except one, granting the Defendants' second motion for partial summary judgment concerning the copyright status of the seven particular films that had fallen into the public domain in Mexico.  In denying the Plaintiffs' motion for partial summary judgment, the district court acknowledged that interpretation of Mexican copyright law under 17 U.S.C. § 104A is a question of law for determination by the court.[5] On this question, the district court ruled that film production companies can hold copyrights —— a <u>derecho de autor</u> ("author's right") —— under the Mexican Civil Code.  The district court reserved for trial, though, the disputed issue whether the Plaintiffs had in fact obtained Mexican copyrights in the 81

---

[5] <u>See</u> 17 U.S.C. § 104A(2)(b) (noting that a "restored work vests initially in the author or initial rightholder of the work as determined by the law of the source country of the work"). <u>See also</u> FED. R. CIV. P. 44.1 (noting that a "court's determination [of foreign law] shall be treated as a ruling on a question of law").

remaining films.

Following these rulings, the parties engaged in extensive motion practice. The Defendants filed, inter alia, another five motions for partial summary judgment, for a total of eight such motions. The Plaintiffs filed a motion for reconsideration of the denials of its motion for partial summary judgment and a motion to stay discovery. The district court denied all motions and set the case for trial.

In the ensuing jury trial, the district court permitted both sides to adduce testimony about the requirements of Mexican copyright law; and the district court instructed the jury that a film production company can be an "author" under Mexican copyright law for purposes of the URAA. The jury returned a verdict for the Plaintiffs, finding that (1) the Plaintiffs own the U.S. copyrights in the 81 films remaining in dispute, (2) the Defendants violated the copyrights in all 81 films, (3) the Defendants were guilty of unfair competition, and (4) the Defendants should pay the Plaintiffs' attorneys' fees and costs. The jury awarded the Plaintiffs copyright infringement damages of $1,512,000, unfair competition damages of $486,000, and attorneys' fees and costs of $984,000.

The Defendants filed several post-verdict motions, requesting that the district court (1) make its own findings of fact and conclusions of law, (2) grant a judgment as a matter of law, (3) grant a new trial, and (4) render a judgment notwithstanding the

6

verdict.  The district court denied all these motions and entered its Amended Final Judgment, which ordered, in addition to the damages awarded at trial, declaratory and equitable relief in favor the Plaintiffs.  The Defendants and the Plaintiffs each timely filed notices of appeal.

## II.
## ANALYSIS

**A.  Can film production companies hold copyrights under Mexican law?**

**1.  Standard of review.**

We "review questions regarding foreign law de novo.  This analysis is plenary."[6]

**2.  The "author's right" under Mexican law.**

The URAA provides that a "[c]opyright subsists . . . in restored works, and vests automatically on the date of restoration."[7]  The copyright in a restored work "vests initially in the <u>author</u> or <u>initial rightholder</u> of the work as determined by the law of the source country of the work."[8]  The URAA thus

---

[6] <u>Karim v. Finch Shipping Co.</u>, 265 F.3d 258, 271 (5th Cir. 2001) (quoting <u>Banco de Credito Indus., S.A. v. Tesoreria Gen.</u>, 990 F.2d 827, 832 (5th Cir. 1993)).  <u>See also</u> <u>Itar-Tass Russian News Agency v. Russian Kurier, Inc.</u>, 153 F.3d 82, 92 (2d Cir. 1998) (noting, in reviewing a district court's application of Russian copyright law under 17 U.S.C. § 104A, that a "[d]etermination of a foreign country's law is an issue of law").

[7] 17 U.S.C. § 104A(a)(1)(A).

[8] 17 U.S.C. § 104A(b) (emphasis added).  <u>See also</u> <u>Films by Jove v. Berov</u>, 154 F. Supp. 2d 432, 448 (E.D.N.Y. 2001) (applying Russian copyright law to determine an "author" under § 104A(b)).

7

establishes two categories for foreign copyright owners whose U.S. copyrights can be restored: (1) authors, and (2) initial rightholders. The class of "initial rightholders" includes only owners of a copyright in a "sound recording,"[9] e.g., music composers; whereas, the class of "authors" includes all other creators of works originally copyrighted in foreign jurisdictions. Accordingly, the Plaintiffs can claim restored copyrights in their films under the URAA only if the Plaintiffs are considered "authors" under Mexican copyright law —— the law of the source country of the work.

The Defendants' principal contention on appeal is that the Plaintiffs, as film production companies, cannot be "authors" under the Mexican Civil Code. The Defendants maintain that the Mexican Civil Code permits only individuals, i.e., natural persons, to be "authors"; that the law does not permit corporations or other legal entities to be "authors" for purposes of claiming copyright entitlements. In contending that only natural persons can hold copyrights under Mexican law, the Defendants argue that we should never reach the restoration analysis under the URAA, because the Plaintiffs fail this threshold determination of qualification to hold copyrights under the "law of the source country of the work."[10]

In response, the Plaintiffs —— and the Government of Mexico,

---

[9] See 17 U.S.C. § 104A(h)(7).

[10] 17 U.S.C. § 104A(b).

as <u>amicus</u> <u>curiae</u> —— urge that the Defendants' failure even to mention the Collaboration Doctrine of the Mexican Civil Code is telling.  They note that in Mexican law, the Collaboration Doctrine covers various provisions regarding copyrights claimed by corporations, which necessarily create copyrighted works only through the collaboration of individuals, <u>viz.</u>, their agents and employees.  Thus, Article 1,198 of the 1928 Mexican Civil Code provides:

> The person or <u>corporation</u> that imprints or publishes a work made by various individuals with the consent of such individuals <u>will have the property in the entire work</u>, except each individual will retain the right to publish anew their own composition, independently, or in a collection.[11]

Subsequent amendments and re-enactments of Mexico's copyright laws in 1947 and 1956 specify that "whoever" creates a work with the "collaboration" of one or more other authors is entitled to the "author's right" (<u>derecho de autor</u>) in the entire work, as long as the contributors are mentioned in the work and are paid for their respective contributions.[12]  Finally, the 1963 amendment of the Mexican copyright laws provides explicitly that "[p]hysical persons and <u>legal entities</u> who produce a work with the special and remunerated collaboration of one or more persons shall enjoy with

---

[11] C.C.D.F. art. 1,197 (1928) (emphasis added).  The relevant translations of the Mexican Civil Code were provided in the record excerpts.

[12] Ley Federal de Derecho de Autor art. 60 (1947); Ley Federal de Derecho de Autor art. 60 (1956).

respect to that work the author's right therein . . . ."[13]

The Defendants devote a substantial portion of their briefs to discussing the role of Collective Bargaining Agreements ("CBA") in Mexico. The Defendants appear to believe that the Plaintiffs maintained before the district court (and continue to maintain on appeal) that they have copyrights in the films by virtue of having obtained assignments of the copyrights via the CBAs of the "natural persons" who worked for the production companies. If the Defendants harbor such a belief, they are mistaken. The CBAs that the Plaintiffs submitted into evidence were meant to prove only that the Plaintiffs' employees had been <u>paid</u>, thereby satisfying one of the requirements under the Collaboration Doctrine for the Plaintiffs, as production companies, to claim copyrights in the films that they produced.

The Defendants' insistence that an "author's right" under Mexican law vests only in a "natural person" is simply wrong. As <u>amicus</u>, the Government of Mexico explains that "throughout every iteration of its intellectual property laws, [Mexico] has recognized the producer as the rightful owner of the copyright of any film in its entirety." Provisions of the Mexican Civil Code identified by the Plaintiffs clearly support this position.[14] Thus,

---

[13] Ley Federal de Derecho de Autor art. 59 (1963) (emphasis added).

[14] <u>See</u> C.C.D.F. art. 1,197 (1928); Ley Federal de Derecho de Autor art. 60 (1947); Ley Federal de Derecho de Autor art. 60 (1956); Ley Federal de Derecho de Autor art. 59 (1963).

10

the district court correctly determined that the Plaintiffs can be and are "authors" under Mexican law, and thus can hold Mexican copyrights (derecho de autor) in the films that they have produced.

**B.   Are the seven films excluded by the district court eligible for restoration of their U.S. copyrights under the URAA?**

The Defendants' second motion for partial summary judgment requested that the district court eliminate consideration of seven of the Plaintiffs' original 88 claims for copyright infringement, contending that the films had fallen into the public domain under Mexican copyright law, thereby precluding restoration of their U.S. copyrights under the URAA.[15]   The district court granted that motion, ruling that the seven films had fallen into the public domain in Mexico and thus were ineligible for copyright restoration in the U.S.

**1.   Standard of review.**

We review a grant of summary judgment de novo, applying the same standard as the district court.[16]   A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[17]   In reviewing all of the evidence, we must disregard all evidence favorable to the moving party that the jury

---

[15] The seven films are: Besame Mucho, El Corsario Negro, Tentacion, Aquile o Sol, Canaima, Humo En Los Ojos, and Pasiones Tormentosas.

[16] Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

[17] Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

11

is not required to believe, and we should give credence to the evidence favoring the nonmoving party.[18]   The nonmoving party, however, cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence.[19]

**2.   Registration requirements of Mexican copyright law.**

Following the threshold determination whether one who claims a restored copyright is an "author" under the source country's law, the URAA predicates restoration of the work's U.S. copyright on its meeting three requirements: The work (1) is not in the public domain in the source country, (2) is in the public domain in the U.S. because of noncompliance with copyright formalities, lack of subject matter protection, or lack of national eligibility, and (3) was first published in the source country and was not published in the U.S. within 30 days after its initial foreign publication.[20] The district court determined that the seven films in question were not eligible for copyright restoration under the URAA because they had fallen into the public domain in the source country ⸺ Mexico.

These seven films were produced and released between 1938 and 1946, and thus were governed by the copyright provisions of the

---

[18] Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000).

[19] Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[20] § 104A(h)(6) (defining conditions for a "restored work").

12

1928 Mexican Civil Code.  Article 1,189 of that Code states:

> The author who publishes a work cannot acquire the rights granted to him by this title if he does not register the work within a period of three years.  At the conclusion of this term, the work enters the public domain [if not registered].[21]

It is undisputed that the Plaintiffs never registered their copyrights in the seven films here at issue.  In 1947, though, Mexico amended its copyright laws to eliminate the registration requirement.  Article 2 of the 1947 Ley Federal de Derecho de Autor states that:

> [copyright] protection provided under this law to authors is conferred upon the simple creation of the work, without the necessity of deposit or registry previously [required] for its protection....[22]

Thus, for any works originally published in Mexico after the effective date of the abolition of that country's registration requirement (January 14, 1948), authors received automatic copyright protection.

The 1947 amendment of the Mexican copyright law also contained a safe harbor for any previously published works that had fallen into the public domain under the 1928 Code prior to the new law's effective date of January 14, 1948.  Authors who had failed to register their works within three years following their publication, as required under Article 1,189 of Mexico's 1928 Code, thereby allowing such works to fall into the public domain, were

---

[21] C.C.D.F. art. 1,189 (1928).

[22] Ley Federal de Derecho de Autor art. 2 (1947).

given a six-month period of repose following the aforesaid effective date of the 1947 revision during which to register their works and thereby restore their copyrights.[23]

### 3. Is the restoration provision of the 1947 amendment applicable to the seven films at issue?

It is undisputed that four of the seven films that the district court ruled to have fallen into the public domain were released by the Plaintiffs less than three years before January 14, 1948, when the 1947 copyright provisions went into effect. On appeal, the Plaintiffs urge us to reverse the summary judgment concerning these four films, contending that the 1947 law, not the 1928 Code, is applicable. They direct us to that language of the 1947 copyright law stating that authors of works that (1) had been previously published under the 1928 Code, and (2) had fallen into the public domain prior to January 14, 1948, were accorded a six-month safe harbor during which to register these works and restore their copyrights. The Plaintiffs also note that any work created after the 1947 law went into effect received automatic copyright protection, with no registration requirement. Thus, urge the Plaintiffs, a temporal hiatus results from the effective dates of these two provisions of Mexico's 1947 copyright law for works that were published after 1945, but never registered: Works in this category had not yet lost their copyrights under the 1928 Code when the 1947 law went into effect; yet, the 1947 law did not provide

---

[23] Id.

14

for either an automatic copyright in, or a period of repose for registration of, works published during this short period.

Based on this analysis of the 1947 copyright law, the Plaintiffs first contend that the four films that they produced during this three-year gap between 1945 and 1948 should be granted copyright protection under the terms of the 1947 copyright law. In so claiming, however, the Plaintiffs are in essence asking us to rewrite Article 2 of Mexico's 1947 copyright law to apply retroactively its automatic copyright date three years earlier than is specified in the statute. This we decline to do. As the district court recognized in its summary judgment order, the automatic copyright provision expressly applies only to those works first published on or after January 14, 1948. Each of the Plaintiffs' four films were produced and released either in 1945 or 1946, and thus, by the plain words of the statute, do not qualify for the automatic copyright provision of the 1947 law.

The Plaintiffs alternatively maintain that canons of Mexican constitutional law support their interpretation of the automatic copyright provision as having retroactive effect, despite the statute's express terms to the contrary. They say that canons of Mexican constitutional law preclude retroactive application of statutes only when doing so would work to the detriment of a person's legal rights; retroactive application is actually sanctioned when it works in favor of both personal and property rights. The Plaintiffs thus conclude that retroactive application

15

of the automatic copyright provision to works created after 1945 would advance Mexico's strong policy interest in favoring the moral rights of an author over the public interest.

We are not convinced by the Plaintiffs' alternative request that we judicially rewrite the 1947 statute to provide for automatic copyright protection as early as 1945, rather than the statute's express effective date of January 14, 1948. In fact, there is no reason for us to consider the canons of Mexican constitutional law in retroactive application of statutes because there is a completely reasonable explanation for the purported "gap" in the 1947 copyright law: There was simply no need to provide a safe harbor for works that remained within the three-year grace period for registration by or later than January 14, 1948, because authors of those works still had time remaining in which to register these works. The safe harbor was needed for works that had <u>already</u> fallen into the public domain: It was only the authors of these works who were given an explicit second bite at the apple. Works produced between January 1945 and January 1948 remained within the three-year grace period specified under the 1928 Code during which their authors could register them. Thus, Mexico's 1947 copyright law implicitly recognized that authors of works created within this three-year period still had time to register their works, as required under the terms of the 1928 Code, and thus were not in need of a grace period or safe harbor.

Simply put, the Plaintiffs should have realized in 1947 that

16

they needed to register their copyrights in these four films before the 1928 Code's three-year grace period expired. It should have been obvious to them that, when the 1947 copyright provisions went into effect the following January, the new automatic copyright provisions would not apply to these four films. The Plaintiffs do not dispute the fact that they never registered the four films in question; neither is there evidence in the record indicating that they did so. By the plain terms of the applicable 1928 Code, these films fell into the public domain in Mexico. Thus, they are ineligible for U.S. copyright restoration under the URAA.

**4. Are the registration requirements of the 1928 Code applicable to all seven films?**

The Plaintiffs propose yet another theory for holding that all seven disputed films retained their copyright protection and thus did not fall into the public domain after the 1928 Code's three-year grace period expired. They note that the 1928 Code's registration requirement applied only to works that were "published." The Plaintiffs quibble semantically that films are never "published"; rather, they are "released." Thus, argue the Plaintiffs, the literal terms of the 1928 Code's registration provision do not apply to films at all.

The Plaintiffs identify no Mexican canon of constitutional law or statutory interpretation that should guide our construction of the 1928 Code's registration requirement. Neither do they identify any Mexican court opinion or other authoritative Mexican

17

interpretation of the 1928 Code's registration requirement of films vis-à-vis books or other "published" works.  When there are gaps in foreign law, though, a U.S. court may use forum law to fill them.[24]

In this regard, U.S. courts have broadly interpreted the U.S. copyright statutes to cover new types of works that clearly fall within the ambit of their protection, even though these new kinds of works are not covered literally by the terminology employed in the statutes at the time of their enactment.[25]  Furthermore, it would be anomalous for us to exempt films from the <u>duties</u> imposed on authors by the 1928 Code while affording these same films the <u>benefits</u> provided to authors by the very same code.  Accordingly, we are satisfied that the term "publishes," as broadly used in the 1928 Code, was intended to encompass all appropriate forms of <u>distributing copyrighted works to the public</u>.  As, in the mid-1940s, films could be distributed to the public only by being "released" to theaters, it would be nonsensical to construe the

_____

[24] <u>See</u> <u>Cantieri Navali Rieunitu v. M/V Skyptron</u>, 802 F.2d 160, 163 n.5 (5th Cir. 1986).

[25] <u>See, e.g.</u>, <u>Sony Corp. v. Universal City Studios, Inc.</u>, 464 U.S. 417 (1984) (applying the 1976 Copyright Act to issues raised by VCRs, which were invented and distributed after the Act was enacted and are not mentioned in literal terms in the statute); <u>Twentieth Century Music Corp. v. Aiken</u>, 422 U.S. 151, 156 (1975) (recognizing that the Copyright Act must be construed in light of its basic purpose "[w]hen technological change has rendered its literal terms ambiguous").  <u>See also</u> <u>Micro Star, Inc. v. FormGen, Inc.</u>, 154 F.3d 1107 (9th Cir. 1998) (applying the 1976 Copyright Act's provisions regarding "derivative works" to an innovative 1990s video game, Duke Nukem 3D, although this term originally applied to novels, films and other literary-based subject matter).

1928 Code's registration requirement as not applicable to the very films that benefit from the copyright protections afforded by the other provisions of that Code. We hold that the 1928 Code's registration requirements are applicable to films, necessarily including the seven disputed here.

**C. Do damage awards for both copyright infringement and unfair competition constitute a "double recovery"?**

**1. Standard of review.**

The Defendants' effort to obtain a remittitur order from the district court is grounded in their contention that the Plaintiffs received a double recovery. We review a denial of remittitur for abuse of discretion,[26] and will only order a remittitur if we are "left with the perception that the verdict is clearly excessive."[27]

**2. Does recovery for both copyright infringement and a Lanham Act violation constitute a clearly excessive verdict?**

Following the jury verdict, the Defendants filed a motion for remittitur in the district court, insisting that the jury's award of damages for both copyright infringement and unfair competition constituted a "double recovery." The Defendants insist that the 1976 Copyright Act "preempts" claims for unfair competition. The district court denied this motion; yet, on appeal, the Defendants re-urge the same contention. Given this preemption of unfair

---

[26] Thomas v. Texas Dep't of Criminal Justice, 297 F.3d 361, 368 (5th Cir. 2002).

[27] Eiland v. Westinghouse Elec. Corp., 58 F.3d 176, 183 (5th Cir. 1995).

19

competition claims, they maintain, a plaintiff cannot assert and recover on both.  Accordingly, argue the Defendants, the district court should not have permitted the jury to award compensatory damages on both claims in this case: The damages are duplicative and thus excessive, requiring remittitur.

In response, the Plaintiffs rightly point out that the Defendants confuse allegations of unfair competition under the Lanham Act with such allegations under state tort law.  This confusion is revealed in the Defendants' reliance on those of our cases in which we have held that the 1976 Copyright Act preempts state common-law claims for conversion, misappropriation, plagiarism, disparagement and defamation.[28]  In this case, though, the Plaintiffs lodged a federal claim for unfair competition under the Lanham Act.[29]

The federal Copyright Act does not preempt the federal Lanham Act, or vice-versa.  In fact, it is common practice for copyright owners to sue for both infringement under the 1976 Copyright Act and unfair competition under the Lanham Act.  Such a litigation posture has never been disallowed by the courts on grounds of either preemption or impermissible double recovery.[30]  We discern

---

[28] See Daboub v. Gibbons, 42 F.3d 285 (5th Cir. 1995).

[29] 15 U.S.C. § 1125(a).

[30] See, e.g., Veeck v. Southern Bldg. Code Cong. Int'l, Inc., 293 F.3d 791, 794 (5th Cir. 2002) (en banc) (noting that "SBCCI counterclaimed for copyright infringement, unfair competition and breach of contract"); Lyons Partnership v.

20

no basis in law or fact that supports the Defendants' contention that the district court abused its discretion in denying their request for remittitur.

**D.    Trial errors asserted by the Defendants.**

The Defendants on appeal allege a litany of trial errors; yet, they offer no logically structured arguments in support of these assertions. The Federal Rules of Appellate Procedure require that an appellant's brief set out in its argument section the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."[31]   "The purpose of the requirements in respect of briefs is to conserve the time and energy of the court and clearly to advise the opposite party of the points he is obliged to meet."[32] Beyond rote recitations of the standards of review and erroneous citations to case law,[33] the Defendants do not provide us with any

---

Giannoulas, 179 F.3d 384, 387 (5th Cir. 1999) (noting that the plaintiff sued for "unfair competition, and trademark dilution under the Lanham Act, copyright infringement, and other claims").

[31] FED. R. APP. P. 28(a)(9)(A) (rev. ed. 2002).

[32] United States v. Abroms, 947 F.2d 1241, 1250-51 (5th Cir. 1991) (quoting Thys Co. v. Anglo Cal. Nat'l Bank, 219 F.2d 131, 133 (9th Cir. 1955)).

[33] For example, in claiming that the trial errors were cumulatively "unfair," the Defendants assert in their appellate brief that the "Constitution . . . does not authorize the issuance of patents (i.e. copyrights) for works in the public domain," and they cite a famous case in patent law. See Graham v. John Deere Co., 383 U.S. 1 (1966). Patents, however, are not copyrights, and thus patent cases are inapposite to copyright cases.

basis — either in their argument or by reference to the voluminous record — for determining that the district court committed the proffered errors. Thus, "[i]n the absence of logical argumentation or citation to authority, we decline to reach the merits of these claims."[34]

## E. Attorneys' fees and costs.

### 1. Standard of review.

We review an award of attorneys' fees for abuse of discretion.[35] "Although attorney's fees are awarded in the trial court's discretion, [in copyright cases] they are the rule rather

---

[34] Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 532 (5th Cir. 1996) (finding appellant failed the requirements of Fed. R. App. P. 28 because the "argument section fails to even mention §§ 1981, 1982, and 1985, let alone offer grounds for appeal, citations to authorities, statutes, and arguments in support"). See also Randall v. Chevron USA, Inc., 13 F.3d 888, 911 (5th Cir. 1994), rev'd on other grounds, Bienvenu v. Texaco, Inc., 164 F.3d 901 (5th Cir. 1999) (finding violation of Fed. R. App. P. 28 and refusing to review appeal of attorneys' fees award given failure of appellant to cite relevant authority or specific errors made by district court in its "bald assertion" that the district court erred); Frazier v. Garrison I.S.D., 980 F.2d 1514, 1527 (5th Cir. 1993) (finding failure of appellate briefing requirements because appellant's "argument is nothing more than a bold, naked assertion that the district court erred"); United States v. Martinez-Mercado, 888 F.2d 1484, 1492 (5th Cir. 1989) (noting that "it is not the function of the Court of Appeals to comb the record for possible error, but rather it is counsel's responsibility to point out distinctly and specifically the precise matters complained of, with appropriate citations to the pages in the record where the matters appear"); Kemlon Prods. and Dev. Co. v. United States, 646 F.2d 223, 224 (5th Cir. 1981) (refusing to reach the merits of a party's claims when that party's brief addressed neither the merits of its own claims nor the reasoning of the district court).

[35] Hogan Systems, Inc. v. Cybresource Int'l, Inc., 158 F.3d 319, 325 (5th Cir. 1998).

22

than the exception and should be awarded routinely."[36]

**2. Does evidence support the quantum of attorneys' fees and costs awarded to the Plaintiffs?**

Under 17 U.S.C. § 505 and 15 U.S.C. § 1117, a court may allow a prevailing party in a copyright infringement and unfair competition lawsuit to recover reasonable costs and attorneys' fees.[37] In this case, the court allowed the jury to award attorneys' fees and costs to the Plaintiffs; and it did so in the amount of $984,000. The sole basis for the quantum of this award was the testimony of Steven Reilley, who had reviewed the files of the three law firms that represented the Plaintiffs in this action. Reilley testified that the law firms' files showed that the Plaintiffs incurred a total of approximately $900,000 in attorneys' fees and costs. Based only on this testimony, the jury awarded the Plaintiffs attorneys' fees and costs of $84,000 more than that amount.

On appeal, the Defendants urge that such an award by the jury is excessive and unreasonable. They point out that the Plaintiffs submitted no time records of their attorneys or documentation reflecting the rates charged or the billable hours spent in

---

[36] McGaughey v. Twentieth Century Fox Film Corp., 12 F.3d 62, 65 (5th Cir. 1994) (quoting Micromanipulator Co. v. Bough, 779 F.2d 255, 259 (5th Cir. 1985)).

[37] 17 U.S.C. § 505 (permitting a prevailing party in a suit under the Copyright Act to recover "full costs" and "reasonable attorney's fees"); 15 U.S.C. § 1117 (permitting a plaintiff in a suit under the Lanham Act to recover for "the costs of the action").

preparing for and litigating this case. The Plaintiffs respond that the award is appropriate, because Reilley's testimony was a sufficient basis for the jury to determine the proper amount of attorneys' fees. The Plaintiffs urge, in the alternative, that if we adjust the fee award, we not reduce it below $900,000, as that is the uncontested amount of fees and costs attested to by their witness.

The Plaintiffs claim to have incurred attorneys' fees and costs of $984,000, which is almost exactly one-half the total amount of compensatory damages awarded by the jury for copyright infringement and unfair competition.[38] In Lanham Act and copyright cases that are certain to involve large amounts of attorneys' fees and costs, considerably more evidence should be required from the prevailing party than the undocumented testimony of a single witness as to an admittedly approximate lump-sum value of the time spent by counsel working on a case. Without substantial, detailed record evidence, both testimony and documents, we cannot properly review the amount of the jury's award. The instant record is completely devoid of even the basic information needed to determine the propriety of the jury's award of fees and costs.[39] Even more

---

[38] The jury awarded a total of $1,998,000 in damages — $1,512,000 for copyright infringement and $486,000 for unfair competition — compared to attorneys' fees of $984,000.

[39] The Plaintiffs cite to a Fifth Circuit case in which they contend that the district court summarily ordered attorneys' fees, which we allegedly affirmed. See Hogan Systems, Inc. v. Cybresource Int'l, Inc., 158 F.3d 319, 325-26 (5th Cir. 1998). A

24

problematical here is an award that <u>exceeds</u> by $84,000 the amount actually attested to by the Plaintiffs' lone witness. Without more, the award appears plainly arbitrary. After all, the function of fee-shifting statutes is to provide for actual reimbursement, not additional compensation. Under the circumstances, we have no choice but to vacate this part of the judgment and remand for redetermination.

On remand, the district court should require the Plaintiffs to provide documentation of the "full costs" and the "reasonable fees" that 17 U.S.C. § 505 and 15 U.S.C. § 1117 permit them to recover in their successful lawsuit under the 1976 Copyright Act and the Lanham Act. In fulfilling its mandate under these fee-shifting statutes, the district court should, among other considerations, apply the <u>Johnson</u> factors,[40] paying special attention to the four central factors: (1) the time and labor required, (2) the customary rate, (3) the amount involved and the results obtained, and (4) the experience, reputation and ability of the attorneys.[41]

III.
CONCLUSION

---

closer reading of the opinion, however, reveals that we discuss and approve of the district court's "use of the <u>Johnson</u> factors" in this case. <u>Id.</u> at 325.

[40] <u>See</u> <u>Johnson</u>, 488 F.2d at 717-19 (setting out 12 factors for assessing the reasonableness of an award of attorneys' fees and costs).

[41] <u>Copper Liquor, Inc. v. Adolph Coors Co.</u>, 624 F.2d 575, 583 (5th Cir. 1980).

25

The district court conducted this complex case commendably, particularly given the difficulties inherent in interpreting and applying foreign law and the extensive motion practice of these vigorous litigants. We affirm all rulings of that court, with the exception of the quantum of attorneys' fees and costs awarded on the basis of the jury's findings. Thus, we vacate and remand only the portion of the district court's final judgment that awards attorneys' fees and costs to the Plaintiffs, and then only as to the quantum. Although awarding fees and costs <u>vel</u> <u>non</u> is clearly appropriate here under 17 U.S.C. § 505 and 15 U.S.C. § 1117, on remand, the district court should conduct a hearing — paper or live — and apply the <u>Johnson</u> factors to determine a reasonable sum to award the Plaintiffs for attorneys' fees and costs.

AFFIRMED in part; VACATED in part; REMANDED with instructions.