PELICULAS Y VIDEOS INTERNAT-
CIONALES, S.A. DE C.V., a Mexi-
can corporation, Plaintiffs,

v.

HARRISCOPE OF LOS ANGELES,
INC., a California corporation; Media
Resources International LLP, a Texas
limited liability partnership; and
Television International Syndicators,
Inc., a Texas corporation, Defendants.

No. CV 02–03538–WJR.

United States District Court,
C.D. California.

Feb. 10, 2004.

John S. Mumford, Jason K. Feldman, John S. Mumford Law Offices, Los Angeles, CA, for Plaintiffs.

James J.S. Holmes, John F. Stephens, Sedgwick, Detert, Moran & Arnold, Los Angeles, CA, for Defendant Harriscope of Los Angeles.

Corine Zygelman, Gina Och, Steven L. Smilay, Murchison & Cumming, Los Angeles, CA, for Defendants Media Resources International and Television International Syndicators.

ORDER RE: OPINION AND ORDER

REA, District Judge.

Both Defendants and Plaintiffs have brought motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The matter came on for hearing before the Court, the Honorable William J. Rea, Judge, presiding, on December 8, 2003. Having considered the motions, the papers filed in support thereof and in opposition thereto, the oral argument of counsel, and the case file, the Court now makes the following decision.

## FACTUAL BACKGROUND

On April 30, 2002, Peliculas Y Videos Internacionales, ("PVI") filed this lawsuit alleging copyright infringement, under 17 U.S.C. §§ 101 et seq., against Harriscope of Los Angeles, Inc. ("Harriscope"), Media Resources International, LLP ("MRI"), and Television International Syndicators, Inc. ("TIS"), (collectively "Defendants").

PVI alleges it owns exclusive copyrights to twenty-nine motion pictures, published in Mexico prior to March 1, 1989, through an assignment of those rights by the films' producers. For purposes of this motion, PVI and Defendants agree that these works fell into the public domain in the United States and were eligible for restoration under the Copyright Act and the Uruguay Round Agreements Act ("URAA"). 17 U.S.C. § 104A. PVI alleges that MRI and TIS licensed broadcast rights to Harriscope in violation of PVI's exclusive copyrights and that Harriscope broadcast those films in violation of PVI's exclusive broadcast rights.

Currently before the Court are the parties' cross motions for partial summary judgment. PVI moves for partial summary judgment, seeking to establish that a producer's assignee may qualify as an "author" under the URAA. Conversely, Defendants move for partial summary judgment, seeking to establish that PVI may not qualify as an author because of its assignee status. The Court will analyze these parallel motions together. Additionally, Defendants move for partial summary judgment, seeking to establish that PVI is not entitled to statutory damages or attorney's fees.

## DISCUSSION

### I. Legal Standard

A court may grant partial summary judgment to determine "before the trial that certain issues shall be deemed established in advance of the trial. The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." *Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 769 (9th Cir.1981) (quoting *Luria Steel & Trading Corp. v. Ford,* 9 F.R.D. 479, 481 (D.Neb.1949)). Under Federal Rule of Civil Procedure 56, a summary judgment motion should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

A fact is material if, under the substantive law governing the case, it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, there is a "genuine" issue over such material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Factual disputes that are irrelevant or unnecessary under the relevant substantive law will not be considered. *Id.*

The moving party must establish that there is no genuine issue of material fact to prevail on a motion for summary judgment. *Mut. Fund Investors v. Putnam Mgmt. Co.,* 553 F.2d 620, 624 (9th Cir. 1977); *Doff v. Brunswick Corp.,* 372 F.2d 801, 805 (9th Cir.1966), *cert. denied,* 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967). To overcome such a burden and survive a summary judgment motion, the responding party need only present evidence from which a jury might return a verdict in its favor. *See, e.g., Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, the mere existence of a scintilla of evidence supporting the non-moving party's position will be insufficient, as there must be evidence on which the jury could reasonably find for

the respondent. *Id.* at 252, 106 S.Ct. 2505. Moreover, the non-moving party "may not rest upon the mere allegations or denials of [its] pleadings" in opposing the motion for summary judgment. Fed.R.Civ.P. 56(e); *Gasaway v. N. Mut. Life Ins. Co.,* 26 F.3d 957, 959–60 (9th Cir.1994).

Because summary judgment is based on an inquiry into the facts, and their status as material and undisputed, a summary judgment motion is appropriate "after adequate time for discovery ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Finally, the Court notes that "it is clear enough ... that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. In that regard, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

## II. Analysis

### A. Cross Motions for Partial Summary Judgment on PVI's Status as an Author Under Mexican Law.

■ In this lawsuit, PVI seeks to establish that it is the rightful owner of the copyright to twenty-nine films and that Defendants infringed this copyright by copying, licensing, and broadcasting these films without authorization. The films were produced in Mexico between 1930 and 1960 and fell into the public domain in

the United States for failure to comply with copyright formalities. However, the Uruguay Round Agreements Act ("URAA") automatically restored the films' copyrights as of January 1, 1996. 17 U.S.C. § 104A (a)(1)(A) & (h)(2). The copyright to these works "vests initially in the author or initial rightholder of the work as determined by the law of the source country of the work." 17 U.S.C. § 104A(b). The contentious issue to be decided in this motion is whether PVI qualifies as the author of the films under Mexican law.

The Fifth Circuit recently held that an author may be the producer of a film under the Mexican Collaboration Doctrine. *Alameda Films S.A. de C.V. v. Authors Rights Restoration Corp., Inc.,* 331 F.3d 472 (5th Cir.2003). The Collaboration Doctrine provides author status only to a producer who remunerates the actors, artists, musicians, and other collaborators on the film. *Id.* at 477–78 (citing Ley Federal del Derecho de Autor art. 60 (1947); Ley Federal del Derecho de Autor art. 60 (1956); Ley Federal del Derecho de Autor art. 59 (1963)). The producer need not be a natural person. *Id.* at 478. This Court agrees with the Fifth Circuit.

■ However, PVI does not claim to be the original producer of the films at issue. Instead, PVI claims to be the *assignee* of the producer of each of the twenty-nine films. Thus, to establish its status as the "author" of the films under Mexican law, and its ownership of the copyrights, PVI must prove: (1) each film's producer remunerated the collaborators on the film, (2) an assignee of a producer may qualify as an author under Mexican law, and (3) the valid assignment to PVI of each producer's rights in each film. In this motion, PVI seeks only to establish the second point, that a producer's assignee may qualify as an author under Mexican law.[1] To

---

1. Defendants MRI and TIS argue that PVI

lacks standing to bring this motion because a

the Court's knowledge, no court has yet addressed this precise question.[2] Thus, the Court will undertake to determine the content of Mexican copyright law ·on this point.[3]

Applicable Mexican copyright law grants two distinct types of rights to an author: (1) moral rights, and (2) exploitation, or patrimonial, rights.[4] Exploitation rights include the right to sell the use of the work for profit and may be sold or assigned in much the same manner as copyrights in the United States. Vargas Decl. ¶¶ 23–28 (citing Ley Federal del Derecho de Autor arts. 2–5, 7 (1956); David Rangel Medina, *Derecho de la Propiedad Industrial e Intelectual* 8 (1992)). *See also,* Luis C. Schmidt, *Computer Software and the North American Free Trade Agreement: Will Mexican Law Represent . a Trade Barrier,* 34 IDEA 33, 41–42 (1993). Moral rights, however, protect the author's dignity or personal artistic expression. *Id.* Because these rights are personal to the author, Mexican law expressly prohibits the

sale or assignment of moral rights. *Id.;* Ley Federal del Derecho de Autor art. 3 (1956). Instead, ownership of moral rights may only pass by succession upon the death of the author. *Id.* Mexican law clearly splits ownership of authors rights and, thus, anticipates the possibility that two separate groups might hold the two distinct types of rights.

■ Defendants argue that because PVI claims to be the assignee of the producers of the films, it cannot possess the moral rights to the films. Thus, Defendants argue, PVI cannot be deemed an "author" under Mexican law for purposes of the URAA.[5]

However, PVI contends that Defendants infringed its exploitation rights by unlawfully copying, licensing, and broadcasting, the films. Because Mexican law anticipates the possibility that two separate entities may hold the two types of rights, it must follow that each entity may enforce the right it holds. Thus, PVI may seek to

---

ruling will not redress PVI's entire claim. MRI and TIS construe the standing requirement too narrowly. A plaintiff must have standing to bring the "Case" or "Controversy" before the court, not to bring each individual motion. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992) (explaining that the doctrine of standing sets apart the "Cases" or "Controversies" that are "appropriately resolved through the judicial process"). PVI has standing to bring this case; should it prove that Defendants infringed its copyright, it will be entitled to damages. PVI's desire to have the Court adjudicate a single, complex issue of law prior to trial cannot deprive it of standing.

2. PVI cites language from this Court's unpublished opinion in *LaParade v. Columbia Pictures Indus., Inc.,* CV–97–0615 (C.D.Cal. May 30, 2001) (Rea, J.), which is currently on appeal to the Ninth Circuit, in support of .its assertion that an assignee may qualify as an author under Mexican law. In *LaParade,* the Court did not reach the precise question it is

now faced with, nor could the Court rely ·on that unpublished decision even if it had determined the issue.

3. In determining the content of Mexican copyright law, the Court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed.R.Civ.P. 44.1.

4. Mexico's Federal Copyright Acts [Ley Federal del Derecho de Autor] of 1947 and 1956 apply to the films at issue, which were published between 1930 and 1960.

5. Defendants also argue that the URAA does not recognize assignments, but instead re- .stores the copyright in the original author, regardless of the author's disposition of its rights. However, the text of the URAA fails to support this reading. The URAA clearly mandates that.the Court identify the author using Mexican law. 17 U.S.C. § 104A. Thus, the . Court finds Mexican law. on assignment of copyrights controlling.

enforce the exploitation rights it claims to hold, but may not seek to enforce the moral rights, which must belong to the original producers' successors. Accordingly, the Court grants PVI's motion for partial summary judgment and holds that an assignee may qualify as an author under the URAA for purposes of enforcing exploitation rights only.

### B. Defendants' Motion for Partial Summary Judgment

Defendants move for partial summary judgment, arguing they are not liable to PVI for its attorney's fees or statutory damages because: (1) Defendants qualify as reliance parties under 17 U.S.C. § 104A(d)(4); and (2) Defendants' infringement commenced prior to the date of copyright registration under 17 U.S.C. § 412.[6]

### 1. Defendants' Status as Reliance Parties

■ Defendants argue that they bear no liability to PVI for attorney's fees or statutory damages under 17 U.S.C. § 412 because they qualify as reliance parties under 17 U.S.C. § 104A(d)(4). In general terms, a reliance party is someone who used a work prior to copyright restoration and who continues to use it after restoration. 17 U.S.C. § 104A(h)(4). A defendant qualifies as a reliance party if:

(A) with respect to a particular work, [the defendant] engages in acts, before the source country of that work becomes an eligible country, which would have violated [17 U.S.C. § 106] if the restored work had been subject to copyright protection, and who, after the source country becomes an eligible country, continues to engage in such acts; ... or

(C) as the result of the sale or other disposition of a derivative work covered under subsection (d)(3), or significant assets of a person described in subparagraph (A) or (B), [the defendant] is a successor, assignee, or licensee of that person.

17 U.S.C. § 104A(h)(4).

■ A reliance party may continue, in limited circumstances, to use the copyrighted material after the date of restoration and is not liable for statutory damages or attorney's fees. 17 U.S.C. § 104A(d) (absolving a reliance party of liability for statutory damages or attorney's fees under 17 U.S.C. § 412 if "acts which would have constituted infringement had the restored work been subject to copyright were commenced before the date of restoration"). The URAA, thus, balances the interests of foreign owners in copyright restoration against the interests of parties using the copyrighted material at the time of restoration.[7] *See* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright,*

---

**6.** At the December 8, 2003 hearing, the Court adopted its tentative ruling on the issue of Defendants' status as reliance parties. The Court took under submission the issue of PVI's entitlement to statutory damages and attorney's fees under 17 U.S.C. § 412. Further, the Court allowed the parties to file supplemental evidence of the broadcast dates for the films at issue. Both parties subsequently submitted excerpts from the broadcast logs for each of the films. The Court's review of this supplemental evidence affects its ruling on both Defendants' status as reliance parties and PVI's entitlement. To the extent this opinion conflicts with the Court's

prior order, this opinion supersedes the prior order. *Acha v. Beame,* 570 F.2d 57, 63–64 (2d Cir.1978) (vacating partial summary judgment ruling after Supreme Court decisions in relevant Title VII claims created a question of material fact).

**7.** Contrary to PVI's assertion, the Court was unable to discern any good faith requirement. Indeed, such a requirement seems contradictory to the plain language of sections 104A(d)(4) and (h)(4), which require that the reliance party act in a manner that would have infringed the copyright, had it been in force, to obtain reliance party status.

§ 9A.04[C] (2002). The copyrights to the twenty-nine films at issue were restored as of January 1, 1996 because Mexico adheres to the Berne Convention. 17 U.S.C. § 104A(h)(2); Berne Convention for the Protection of Literary and Artistic Works, Sept. 9, 1886.

■ The uncontroverted evidence establishes that Defendants qualify as reliance parties as to twenty-two of the twenty-nine films because they engaged in infringing acts prior to January 1, 1996. Defendants and PVI both submitted broadcast logs showing actual broadcast dates for the twenty-nine films.[8] The following chart summarizes the broadcast logs and shows the broadcast of twenty-two films prior to January 1, 1996.

| | Motion Picture Title | First Broadcast Date |
|---|---|---|
| 1 | A Sablazo Limpio | 11/3/1993 |
| 2 | Cien Gritos de Terror | 3/30/1994 |
| 3 | Contigo a la Distancia | 10/27/1993 |
| 4 | Delirio Tropical | 2/20/1994 |
| 5 | El | 4/16/1995 |
| 6 | El Ametralladora | 4/5/1994 |
| 7 | El Bello Durmiente | 7/5/1993 |
| 8 | El Club de los Suicidas | 8/5/1994 |
| 9 | El Fantasma de la Opereta | 4/16/1994 |
| 10 | El Fuego de Mi Ahijada | 9/4/1994 |
| 11 | El Medico de las Locas | 2/26/1994 |
| 12 | El Rio de las Animas | 3/5/1994 |
| 13 | El Zorro de Jalisco | 2/27/1994 |
| 14 | Entre Bala y Bala | 12/15/1993 |
| 15 | Jesusita en Chihuahua | 11/21/1993 |
| 16 | Juan Polainas | 9/4/1993 |
| 17 | Los Santos Reyes | 2/6/1994 |
| 18 | Los Valientes No Mueren | 11/7/1993 |
| 19 | Me Importa Poco | 12/2/1993 |
| 20 | Refifi Entre las Mujeres | 11/20/1993 |
| 21 | Viaje a la Luna | 1/22/1995 |
| 22 | Viva Chihuahua | 7/31/1993 |

■ Deposition testimony confirms this evidence. PVI's President, Mr. Ortega, testified at deposition that he learned as early as 1994 or as late as 1996 that Harriscope had broadcast the films at issue.[9]

8. These documents qualify as hearsay but are admissible under the business records exception because it was the television station's regular practice to make the broadcast logs and to input the information on a daily basis. Garibay Dep., 40:21–43:4, contained in Mumford Decl., Exh. 1.

9. In an attempt to controvert this evidence from his deposition, PVI submits Mr. Ortega's declaration, in which he testifies:

Plaintiff first learned of Harriscope's infringing broadcasts of the 29 motion pictures at issue in this action after the infringing broadcasts which are alleged in this action occurred between May 1999 and June 2001. Plaintiff never learned of any earlier infringing broadcasts by Harriscope, or any other infringing conduct by any other parties for that matter, of the 29 motion pictures at issue in this action.

Ortega Decl. ¶ 5. However, this declaration flatly contradicts Mr. Ortega's earlier testimony, discussed above. The Court finds that this portion of Mr. Ortega's declaration is a sham and disregards it. See Sch. Dist. No. 1J, Multnomah County, Oregon v. ACandS, Inc., 5 F.3d 1255, 1264 (9th Cir.1993) (explaining that "a party should not be able to substitute an affidavit alleging helpful facts for earlier deposition testimony harmful to its case in order to avoid summary judgment" if "the affidavit was a sham").

Further, Defendants are correct that these statements in Mr. Ortega's declaration are inadmissible hearsay. Fed.R.Evid. 801 & 802. Mr. Ortega testifies in his declaration that PVI "first learned" that Harriscope broadcast the 29 works in May 1999. In this statement, Mr. Ortega necessarily repeats someone else's out of court statement and offers it for its truth, namely that Harriscope did not broadcast the works until 1999. Thus, this statement is hearsay, and PVI has not suggested, nor can the Court identify, any relevant hearsay exception that would render the statement admissible.

In an apparent contradiction, Mr. Ortega's deposition statements, offered by Defendants, seem to likewise qualify as hearsay. However, these statements qualify as admissions by Mr. Ortega and PVI, and, thus, fall outside the definition of hearsay. Fed.R.Evid. 801(d)(2).

Rudin Decl. Exh. F. Further, Mr. Ortega admits that Harriscope obtained the films from Jackson Shirley's companies, MRI and TIS. *Id.* Finally, it is undisputed that MRI and TIS created "pan and scan" copies of the films prior to licensing them to Harriscope, which constitutes infringement under 17 U.S.C. § 106(1)–(3). MRI's Response to PVI's Interrogatory Number 3, contained in Rudin Decl., Exh. H.

Thus, the evidence clearly establishes that infringing acts, that is, the creation of the pan and scan copies and the broadcast of the films, occurred prior to January 1, 1996. Because the broadcast logs additionally establish the continued broadcast of the films after January 1, 1996,[10] the Court holds that Defendants qualify as reliance parties as to the twenty-two films listed above. The Court grants Defen-

dants' motion for partial summary judgment as to these twenty-two films.

**2. Availability of Attorney's Fees and Statutory Damages Under 17 U.S.C. § 412.**

 Defendants next argue that they are not liable for attorney's fees and statutory damages under 17 U.S.C. § 412. To prevail, Defendants must show: (1) that the works were published; (2) the date of copyright registration; and (3) that Defendants' infringement commenced prior to the registration.[11] 17 U.S.C. § 412. Because this case arises under the URAA, § 412 potentially applies to a narrow category of films: those that were first broadcast after January 1, 1996, the date of automatic copyright restoration, and before the date of PVI's copyright registration.

10. The following chart summarizes the information from the broadcast logs, showing the films' subsequent broadcasts.

| | Motion Picture Title | Subsequent Broadcast Date |
|---|---|---|
| 1 | A Sablazo Limpio | 1/17/1998 |
| 2 | Cien Gritos de Terror | 1/11/1998 |
| 3 | Contigo a la Distancia | 3/4/2000 |
| 4 | Delirio Tropical | 1/22/1998 |
| 5 | El | 10/26/1999 |
| 6 | El Ametralladora | 11/7/1999 |
| 7 | El Bello Durmiente | 4/15/2000 |
| 8 | El Club de los Suicidas | 5/31/1998 |
| 9 | El Fantasma de la Opereta | 12/31/1997 |
| 10 | El Fuego de Mi Ahijada | 1/29/1998 |
| 11 | El Medico de las Locas | 11/12/1999 |
| 12 | El Rio de las Animas | 5/19/2000 |
| 13 | El Zorro de Jalisco | 3/25/2000 |
| 14 | Entre Bala y Bala | 10/11/1997 |
| 15 | Jesusita en Chihuahua | 2/21/1999 |
| 16 | Juan Polainas | 11/29/1997 |
| 17 | Los Santos Reyes | 5/1/1999 |
| 18 | Los Valientes No Mueren | 6/26/1999 |
| 19 | Me Importa Poco | 2/25/1998 |
| 20 | Refifi Entre las Mujeres | 1/17/1998 |
| 21 | Viaje a la Luna | 8/21/1999 |
| 22 | Viva Chihuahua | 11/2/1997 |

11. Section 412 provides, in pertinent part: "no award of statutory damages or of attorney's fees...shall be made for...(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the

The uncontroverted evidence from the broadcast logs discussed above establishes that the following four films meet those criteria.

| | Motion Picture Title | First Broadcast Date | U.S. Copyright Registration Date |
|---|---|---|---|
| 1 | Los Inocentes | 11/3/1997 | 4/30/1998 |
| 2 | Los Lios De Barba Azul | 12/21/1997 | 2/9/1998 |
| 3 | Una Horca Para el Texano | 11/9/1997 | 4/30/1998 |
| 4 | Yo Pecador | 5/10/1997 | 2/9/1998 |

As summarized above, these four films were published, by their broadcast, after the date of copyright restoration, January 1, 1996, and before the date of copyright registration. Accordingly, the Court holds that the requirements of § 412 are met and PVI is not entitled to statutory damages or attorney's fees as to these four films. The Court grants Defendants' motion for partial summary judgment as to these four films.

However, the Court denies Defendants' motion for partial summary judgment as to the three remaining films: (1) Camino del Infierno, (2) El Tunco Maclovio, and (3) Recien Casados...No Molestar. The evidence provided fails to establish that these three films were broadcast prior to their copyright registration dates.

first publication of the work." 17 U.S.C. § 412.